Luther COLEMAN, Appellant,

v.

Merle NEWTON et al., Appellees.

No. 4406.

Court of Civil Appeals of Texas,
Eastland.

Aug. 28, 1970.

Wayne Burns, Big Spring, for appellant.

Rosser & Carroll, Gene L. Dulaney, Ross H. Hemphill, Hemphill & Mills, Snyder, Walton S. Morrison, Big Spring, for appellees.

WALTER, Justice.

This is a suit to remove cloud from title. Harry Newton and wife Merle Newton were the owners of Lots 2 and 3 in Block "F", Westridge Addition, Section 2, to the City of Snyder. On August 24, 1967, they contracted with Jimmie Brunson to build two houses on these lots. On such date they executed mechanic's and materialman's liens which were duly recorded. They also executed and delivered their promissory notes payable to Brunson for the full amount of the contract prices. The notes and liens were assigned to the Coahoma State Bank. The record shows that Newtons paid the notes or caused them to be paid and the Bank released the lien on Lot 2 March 8, 1968, and on Lot 3 June 19, 1968.

Luther Coleman, National Building Centers, Inc. and Snyder Heating and Air Conditioning Company furnished labor and material to Brunson as subcontractors.

The appellant Coleman contends he is the only subcontractor who sent the owner a copy of his lien affidavit and is entitled to recover the entire 10% of the contract price of the buildings which the owner tendered into court.

The court found that the three subcontractors had complied with the applicable statutes by filing their liens and giving proper notices and apportioned the 10% among them and the liens asserted by them were removed as clouds upon the title of the Newtons and their assigns.

The subcontractor Coleman has appealed and contends:

"All of the lien claimants involved in this suit would be designated in the class of 'subcontractors' as is provided by subsection of Article 5452. The first steps necessary to the securing of their liens are specified in Article 5453 wherein they are each granted ninety (90) days subsequent to the accrual of their indebtedness to file an affidavit claiming a lien. Apparently, all claimants complied with this deadline. The additional requirement is imposed in Article 5453 in that a copy of such lien affidavit be sent to the owner. The evidence shows that Coleman was the only claimant to comply with this particular requirement; although it may not be considered a mandatory one to the establishment of a valid lien."

Mrs. Merle Newton was shown certified copies of National Building Centers' lien affidavits and claims that had been filed in the mechanic's and materialman's lien records of Scurry County and asked if she had received a copy of the instruments whereupon she stated that she had. It was also stipulated that notices of National Building Centers' claim were mailed to the Newtons on May 15, 1968. Mrs. Newton also testified that she first became aware that Brunson was not paying his bills when she "got those bills from—on the concrete and on the National Builders.

They come within just a short period of each other." It was stipulated that the Newtons received Snyder Heating and Air Conditioning Company's notice of lien by registered mail.

We find some evidence of probative value which supports the judgment and appellant's contention that he is entitled to recover the entire 10% is overruled.

Appellant Coleman contends that he, as a subcontractor, is entitled to a lien against the property for the amount of his claim in excess of the ten percent provided for in Vernon's Ann.Civ.St. article 5469.

In General Air Conditioning Company v. Third Ward Church of Christ, 426 S.W.2d 541 (Tex.Sup.Ct.1968) the court after discussing in detail articles 5452–5469 said:

"—The question before this Court is whether the courts below erred in holding that General failed to establish a statutory mechanic's and materialman's lien against the property of the Church under the provisions of Articles 5452–5469."

"Under these circumstances, we hold that the quoted provisions of Articles 5463 and 5469 are controlling, and that General was entitled to a recovery and a lien against the Church property to the extent of the ten per cent fund that the Church was required to retain."

The court reserved a decision on the question of whether the subcontractor would be entitled to a judgment for any amount in excess of the ten per cent.

Coleman testified that he had an oral agreement with the contractor Brunson to do the concrete work on the Newton houses; that he furnished the labor and materials for all the concrete work under the roof for 75¢ a square foot and the driveways and walks for 50¢ a square foot; that he began his work on these houses the last part of August or the first part of September 1967; that he began work on the house located on Lot number 2 first; that before he finished "pouring

the first one" he started working on the second house; that he was working on both houses at the same time "at least part of the time"; that he completed his work on the two houses "the first part of February 1968;" that he did some clean up work and picked up his forms on March 16th; that he presented his bill to Brunson and he refused to pay it. Coleman introduced copies of bills dated March 1, 1968 which showed $2,848.75 for work on the house on Lot 2 and $2,533.00 for work on the house on Lot 3.

Coleman's affidavit for a subcontractor's lien was filed for record on May 10, 1968 and Mrs. Newton testified she received a copy of it on or about May 10th, 1968. On May 8, 1968 Coleman's lawyer wrote the Newtons and Brunson a letter advising them of his claim against them.

■ Newton did not comply with Article 5469 by retaining 10% of the contract price for 30 days after the work was completed. However, when she filed her suit to remove cloud from her title she tendered such amount into court which was a sufficient substantial compliance with the statute.

■ The owner Merle Newton, whose husband Harry Newton was living at the time the contracts were made and the notes were delivered but passed away before the suit was filed, contends that at the time they entered into the contracts with the builder Brunson they made, executed, and delivered to him two notes for the full amount of the agreed price for the building of the two houses. Newton contends that by making payment to the contractor in full, they were not indebted to the contractor at the time Coleman's claims were served on them.

Article 5463 contains this provision:

"The owner shall in no case be required to pay, nor his property be liable for, any money, other than that required to be retained by him under the provisions of Article 5469 hereof, that he may have paid to the contractor before he is authorized under this Article to retain the money."

In McCutcheon v. Union Mercantile, Tex.Civ.App., 267 S.W.2d 916 (writ ref.), the court said:

"There should be no serious contention that the original note for $16,950 was not a negotiable note. It has all the requirements of a negotiable instrument as prescribed by the Negotiable Instrument Law, Art. 5932, R.C.S. The fact that it refers to the mechanic's lien contract by express provision of the statute is unimportant. It is nevertheless an unconditional promise to pay. Art. 5932, Sec. 3(2). The owners, the Dinglers, had therefore paid the full amount of the lien contract by execution and delivery of the negotiable promissory note to the contractor. They owed him nothing at the time the notices were served on them, since at that time he had transferred the note and lien contract to the bank."

In McGranahan Lumber Co. v. Pyramid Asbestos & Roofing Co., Tex.Civ.App., 18 S.W.2d 224 (writ ref.), the court said:

"The execution and delivery of the notes by English to Price for the full sum which he had agreed to pay for the buildings entitled him to the same protection that he would have had had he paid the money to Price, Thelander v. Becker (Tex.Civ.App.) 199 S.W. 848; Rawles v. Perkey, 50 Tex. 311; Kauffman v. Robey, 60 Tex. 310, 48 Am.Rep. 264; Martin v. [German American] Bank (Tex.Civ.App.) 102 S.W. 131.

Under the facts stated, English was not indebted to Price at the time the notices of appellees of their claims were served upon him, and therefore appellees did not acquire a lien against his property by service of such notices."

We agree with Newton's contention and affirm the judgment.