Robert E. McKALIP et ux., Appellants,

v.

SMITH BUILDING & MASONRY
SUPPLY, INC., Appellee.

No. 6154.

Court of Civil Appeals of Texas,
Waco.

May 15, 1980.

Rehearing Denied June 12, 1980.

James H. Koehn, Leonard, Koehn, Rose &
Hurt, Austin, for appellants.

Charles E. Hampton and Don L. Baker,
Law Offices of Don L. Baker, Austin, for
appellee.

## OPINION

JAMES, Justice.

This is a mechanic's and materialmen's lien case. The principal questions are: (1) whether a materialman under this record is entitled to a lien in excess of 10% of the contract price, and (2) what constitutes the contract price.

Plaintiff-Appellants Robert E. McKalip and wife, Ida McKalip, as owners of Lot 19, Lake Oaks Subdivision, in Burnet County, Texas, brought this suit to remove cloud from their title by having declared invalid a mechanic's and materialmen's lien claimed thereupon by Defendant-Appellee Smith Building and Masonry Supply, Inc. In said suit the McKalips also sued Jim McCoy, the contractor, for breach of contract and for indemnity for any sums which might be adjudged against them. Defendant-Appellee Smith, the materialman, filed a counterclaim seeking foreclosure of the lien asserted by Smith against the McKalip property.

The case was tried before the court without a jury, after which the trial court, among other things, rendered judgment in favor of Materialman Smith against the Owners McKalip, from which judgment the McKalips appeal. Moreover, the McKalips were also awarded judgment against Contractor McCoy; however, McCoy has not appealed from this portion of the judgment.

The material facts are undisputed and are covered by a written "Stipulation of Facts" filed by the parties prior to trial; and after judgment, the trial court filed findings of fact and conclusions of law wherein said facts are again set forth. None of said findings of fact have been attacked.

Said material facts are as follows: In December 1976 the McKalips contracted with Jim McCoy to construct a lake house on their property in Burnet County, Texas, for a total contract price of $20,000.00. In preparation for the construction of the house, and prior to contracting with McCoy, the McKalips had engaged two other contractors, one of whom constructed a septic tank for about $1500.00, and the other of whom installed a water supply system on the property for about $1500.00. Both the septic tank and the water system were completed and paid for before McCoy began work on his contract.

The property is not homestead property of the McKalips. McCoy began construction on the house immediately after the contract was finalized. The McKalips made a down payment and two progress payments to McCoy in the amounts of $10,000.00, $5,000.00, and $3,000.00, respectively. On April 12, 1977, McCoy completed the construction and presented a final invoice to the McKalips in the amount of $2,151.96, $2,000.00 being the amount due on the original contract price, plus $151.96 being the amount expended for "extras." On April 13, 1977, the McKalips paid this final balance due to the contractor. Appellee Smith supplied materials used in the construction of the building, of the value of approximately $4648.35. McCoy failed to pay for these materials, whereupon Smith filed an affidavit of Lien on the McKalip property on April 15, 1977. Statutory notices and copies of the lien affidavit were caused to be sent by Smith by certified mail and were received by the McKalips on April 18, 1977. As stated, prior to this last-mentioned date, to wit, on April 13, 1977, the McKalips had already made the final payment to Contractor McCoy, without having withheld or retained any of the funds due to McCoy. In other words, the McKalips expected McCoy to pay the debt owed to Appellee Smith. There was no privity of contract between the McKalips on one hand and Smith on the other.

On June 30, 1977, the McKalips filed this suit to remove the lien cloud from the title to their property. Pleading alternatively, the McKalips asserted: (1) that the lien was invalid for the stated reason that the affidavit failed to comply with statutory requirements; or (2) if the affidavit of lien did comply, it could only create a lien to the extent of 10% of the McCoy contract price, to wit, 10% of $20,151.96 or $2,015.19. Thereupon, the McKalips paid $2,015.19 into the registry of the court and prayed that

the Smith lien be thereby discharged, and the cloud upon the title of the McKalip property be removed.

Defendant-Appellee Smith filed a counter-claim seeking foreclosure of its lien to the extent of the full amount due it for materials furnished, to wit, $4,648.35.

Trial was had before the court without a jury, after which the trial court entered judgment as follows:

(1) That Smith was awarded foreclosure of its mechanic's and materialmen's lien for the full amount of $4648.35, plus pre-judgment interest in the amount of $188.02, against the subject real property belonging to the McKalips;

(2) That the $2015.19 tendered into the registry of the court by McKalips was awarded to Smith, and that the amount of judgment hereinabove mentioned accordingly was reduced by such amount;

(3) That Smith have personal judgment against the McKalips in the amount of $404.19, same being the difference between 10% of the McCoy contract price ($20,151.96) and 10% of the total cost of the project, including the construction of the water system, the septic tank, and the house ($23,151.96) plus pre-judgment interest; and

(4) The McKalips were awarded judgment against Contractor McCoy in the amount of $4648.35 plus pre-judgment interest plus $800.00 reasonable attorney's fees.

The conclusions of law filed by the trial court after judgment are as follows:

"1. Smith perfected the materialman's lien authorized by Art. 5452 Tex.Rev.Civ. Stat.Ann. Art. 5452 (Vernon Supp.1978) by complying or substantially complying with Art. 5453 Tex.Rev.Civ.Stat.Ann. Art. 5453 (Vernon Supp.1978).

"2. Smith is entitled to foreclosure of its materialmen's lien on the subject real property.

"3. The statutorily required ten percent (10%) retainage under Art. 5463 and Art. 5469 is $2,315.20.

"4. McKalip did not comply with the statutory duty to retain for thirty days after job completion ten percent (10%) of the construction contract funds under Art. 5469.

"5. McKalip did not substantially or constructively comply with the statutory duty to retain for thirty days after job completion ten percent (10%) of the construction contract funds under Art. 5469.

"6. Under Art. 5463, Smith is entitled to personal judgment against McKalip for $2,315.20 and pre-judgment interest thereon.

"7. Art. 5463 does not limit the lien acquired under Art. 5452 by Smith on the subject property.

"8. Art. 5469 does not limit the lien acquired under Art. 5452 by Smith on the subject property."

Appellants McKalip come to this court upon seven points of error, in substance asserting that the trial court erred in holding that Smith was entitled to foreclosure of a lien in an amount exceeding 10% of the contract price. They further contend that the "contract price" should not include the cost of the septic tank and water system, but should include only the cost of the construction of the house. In other words, Appellants contend that 10% of the "contract price" is 10% of $20,151.96 or $2015.19 as opposed to 10% of $23,151.96 or $2315.19. We sustain Appellants' contentions and accordingly reform the trial court's judgment as hereinafter set out, and as reformed, affirm same.

In the case at bar, Appellee Smith's entitlement to a mechanic's and materialmen's lien is created solely by statutory provisions contained in Articles 5452 through 5472e, Vernon's Texas Civil Statutes. A determination of the problems presented to us requires a construction of the pertinent language contained in Articles 5463 and 5469, Vernon's Texas Civil Statutes. Specifically, Article 5463, Section 2, fixes limitations on the dollar amount of liens enforceable by "anyone other than the original contractor."

Article 5469 in its pertinent parts reads as follows:

"Whenever work is done whereby a lien or liens may be claimed under Article 5452 hereof, it shall be the duty of the owner . . . to retain in his hands during the progress of such work and for thirty (30) days after the work is completed . . . ten per cent (10%) of the contract price to the owner . . . . . All persons who shall send notices in the time and manner required by this Act and shall file affidavits claiming a lien not later than thirty (30) days after the work is completed shall have a lien upon the *fund* so retained by the owner . . . . . If the owner . . . refuses or fails to comply with the provisions of this Article, then all claimants complying with the provisions of this Act shall share ratably among themselves . . . liens at least to the extent of the aforesaid fund of ten per cent (10%) which should have been retained, as against the house . . . and all of its properties . . . to secure payment of such liens." (emphasis supplied).

Now, the above quoted provisions of Article 5469 need to be construed in the light of the limiting provisions of Article 5463. The pertinent portion of Section 2 of Article 5463 reads as follows: ". . . *The owner shall in no case be required to pay, nor his property be liable for, any money, other than that required to be retained by him under the provisions of Article 5469 hereof, that he may have paid to the contractor before he is authorized under this Article to retain the money.* If the notices prescribed in Article 5453 have been received by the owner and claimant's lien has been secured in accordance with Article 5453 and the claim or any part thereof is reduced to final judgment, *the owner shall be required to pay, and his property shall be liable for, any money that he may have paid to the contractor after he is authorized to retain such money by virtue of this Article, as well as any money he is required to retain by the provisions of Article 5469 hereof.*" (emphasis supplied).

■ The above-quoted language of Article 5463 in our opinion clearly provides that the maximum amount of a lien that can be claimed by a subcontractor or materialman is limited to: (1) the amount required to be retained under Article 5469 (which in the case at bar would be 10% of the McCoy contract price or $2015.19), plus (2) any additional amount that the materialman might be entitled to that was paid out to the contractor *after* the owner received statutory notice and warning to retain funds owing to the contractor. In the case at bar the Owners McKalip had theretofore paid out all funds to Contractor McCoy before receiving notice of Materialman Smith's claim. In other words, no money was paid out or remained to be paid out by the owners after the owners were authorized to retain funds by virtue of the notice by Materialman Smith.

Therefore, the maximum amount of lien materialman Smith could lawfully assert was the 10% of the McCoy contract or $2015.19 which was required by Article 5469 for Owners McKalip to retain. Thus, by the express language of this statute, Owners McKalip could only be liable for that amount "required to be retained . . . under the provisions of Article 5469," which was $2015.19.

In the instant case the work of the McCoy contract was completed on April 12, 1977, and under the provisions of Article 5469 there is no question but that Owners McKalip were required to retain 10% of the contract price or $2015.19 for 30 days after completion, to wit, until May 12, 1977. The owners did not retain this 10% but instead paid Contractor McCoy the balance of the contract price in full on the next day after completion, to wit, on April 13, 1977. However, on June 30, 1977, the McKalips filed this suit at which time they paid into the registry of the court $2015.19 same being 10% of the McCoy contract price, the disposition of which funds awaits the orders of Court.

Appellee Materialman Smith here argues that in the event the owner fails to retain the required 10% fund, then the amount of the mechanic's and materialmen's lien is not limited to 10% of the contract price, but may then extend to the full amount of the

debt owed, which here was $4460.33. In support of this argument Appellee refers to the particular language of Article 5469 which refers to *"liens at least to the extent of the aforesaid fund of [10%] which should have been retained . . . ."* (emphasis supplied). In our opinion this argument of Appellee is not tenable in view of the express limitation of Article 5463, hereinabove quoted. The language of Article 5469 when considered in the context of the language of Article 5463 in our opinion limits Materialman Smith's lien in the case at bar to 10% of the McCoy contract price, to wit $2015.19. Smith's lien might have been greater than 10% of the contract price if the owners had paid out additional moneys (that is, greater than 10%) to contractor McCoy *after* the owner had received notice to retain funds. But that is not what happened here. At the time the owners received the notice of materialman Smith's lien, contractor McCoy had been fully paid. Here, the owners had simply failed to retain the last 10% for 30 days as required by Article 5469, but soon thereafter deposited such 10% into the registry of the court; therefore, in our opinion the maximum amount of lien Smith was entitled to was 10% of the contract price. Thus, in this case we believe Smith's lien should have been limited to the 10% retainage required by Article 5469. For authorities supportive of this position, see *Coleman v. Newton* (Eastland Tex.Civ.App.1970) 458 S.W.2d 688, no writ; and *Dowdy v. Hale Supply Co.* (Fort Worth Tex.Civ.App.1973) 498 S.W.2d 716, no writ. In *General Air Conditioning Co. v. Third Ward Church of Christ* (Tex. 1968) 426 S.W.2d 541, the owner Church had failed to retain 10% of the contract price for 30 days as required by Article 5469. A subcontractor who claimed a lien was held to be entitled to its asserted lien to the extent of 10% of the funds the Church had been required to retain. However, in that case the total amount of this subcontractor's claim was *less* than 10% of the contract price; therefore our Supreme Court was not faced squarely with the problem before us in the case at bar, where we have a subcontractor whose claim is *more* than

10% of the contract price. In the *General Air Conditioning Co.* case, the Supreme Court expressly reserved the question as to the extent of recovery, if any, to which a subcontractor might be entitled for amounts in excess of 10%. In the light of this state of the authorities, we agree with the rationale of *Coleman v. Newton*, supra, and *Dowdy v. Hale Supply Co.*, supra, and hold that Materialman Smith's lien is limited to 10% of the McCoy contract price, to wit, $2015.19.

The next question presented to us is this: When we say Materialman Smith's lien is limited to 10% of the contract price, what do we mean by the term "contract price"? In other words, 10% of what? Appellant Smith contends, and the trial court found, that the 10% retainage amounted to $2315.20, same being 10% of the cost of the *total project*, meaning the McCoy contract to build the house ($20,000 contract price), together with the septic tank contract (about $1500.00 contract price) plus the water system contract (about $1500.00 contract price). In support of this contention Appellee Materialman Smith relies upon *Hayek v. Western Steel Co.* (Tex.1972) 478 S.W.2d 786. Appellee is correct in his contention that *Hayek's* holding is supportive of his position. In *Hayek*, our Supreme Court in interpreting Article 5469, held on page 793 that "When there is a contract price for 'the work' (construction or repair of any house or building), ten per cent of such contract price for the *entire project* continues to be the measure of the owner's liability." (emphasis supplied). Therefore, applying the rule in *Hayek* to the case at bar, 10% of the "contract price" would be 10% of $23,151.96 or $2315.19 as found by the trial court.

However, in 1973, the Legislature, prompted by the *Hayek* decision, amended Article 5452 to provide definitions for the terms "contract price" and "work." House Bill 1059, 1973 Tex.Gen.Laws, Chapter 96, pp. 213 et seq. The bill analysis accompanying House Bill 1059 contained in the minutes of the Legislature stated the following:

"1. *BACKGROUND*

In 1961 the Legislature passed a comprehensive revision of the mechanic's lien laws and added provisions for prefabricated materials. This legislation set up a retainage requirement of 10% to protect the contractor. In a recent Texas Supreme Court case of *Hayek v. Western Steel Co.*, 478 S.W.2d 786, the court held in a 5–4 decision that the 10% retainage was required for the total contract price of the job rather than 10% of each individual contract. The effect of that decision was to change the definition of the term 'work.' The original intent of the legislation was for the 10% retainage requirement to apply to each individual contract, not the total cost of the job.

"2. *PURPOSE*

To carry out the intent of the original legislation which created the 10% retainage requirement by limiting the 10% to each individual contract by establishing the legislative intent as to the statutory construction of terms 'work' and 'contract price.'"

Sections 2d and e of Article 5452 after the 1973 Amendment now read as follows:

"d. The word 'work' as that term is used in Chapter 2 of Title 90, is to be construed to mean any construction or repair, or any part thereof, which is performed pursuant to an original contract, as that term is defined herein. The term 'contract price' as that term is used in Chapter 2 of Title 90, is to be construed to mean the cost to the owner for any construction or repair, or any part thereof, which is performed pursuant to an original contract, as that term is defined herein.

"e. An original contractor is defined as one contracting with an owner, directly or through his agent; and an original contract is defined as an agreement to which an owner is a party, either directly or by implication of law. There may be one or more original contractors."

Significantly, Section 3 of Article 5452, the emergency clause, has further language shedding light on the legislative intent, to wit:

"Sec. 3. The fact that court construction of Chapter 2, Title 90, has created an unreasonable retainage requirement on owners who enter into original contracts, and that such interpretations have resulted in confusion and uncertainty in the construction industry, . . . create an emergency . . . .."

■ In our opinion the Legislature's Amendment of Article 5452 was intended to and does have the effect of limiting the retainage fund of Article 5469 to 10% of a particular original contract, in situations where there are multiple original contracts executed for the construction of a single project. See Annual Survey of Texas Law 1974: Property, 28 Southwestern Law Journal 27, at page 51.

■ In view of this 1973 amendment to Article 5452, we agree that Appellant Owners McKalip are correct in asserting that they as owners were required by Article 5469 to retain only 10% of the *McCoy* contract price, and that the lien enforceable by Appellee Materialman Smith would be thus limited by that amount, to wit, $2015.19.

■ Appellants have presented one additional point of error asserting that the trial court erred in finding that the deposit into the registry of the court the amount of $2015.19 did not constitute substantial compliance with Article 5469. Since we are of the view that Appellee's lien existed only to the extent of $2015.19, we sustain Appellants' contention and hold that the deposit of said amount did constitute substantial compliance with Article 5469. See *Coleman v. Newton*, supra.

Having sustained all of Appellants' assignments of error, we reform the trial court's judgment as follows:

(1) Appellee Smith Building & Masonry Supply, Inc. shall have and recover judgment for foreclosure of its lien against the funds deposited in the registry of the trial court in the amount of $2015.19, said sum being 10% of the McCoy contract price, and the clerk of the trial court is hereby authorized and directed to pay over to Appellee Smith the said sum of $2015.19 in full satis-

faction of Appellee Smith's lien. Article 5469, V.T.C.S.

(2) Appellee Smith shall have in addition to the above lien foreclosure, a personal judgment against Appellants Robert E. McKalip et ux Ida E. McKalip in the amount of $217.31, same being pre-judgment interest on $2015.19 at the rate of 6% per annum from May 13, 1977, said date being the 31st day after completion of the McCoy construction (see *Hayek v. Western Steel Co.*, hereinabove cited) until February 28, 1979, same being the date of the trial court's judgment, together with post-judgment interest on the amount of $2232.50 (the amount of the lien plus pre-judgment interest), at the rate of 9% per annum from February 28, 1979, the date of the trial court's judgment, until paid, together with all costs of the trial court.

(3) Appellee Smith shall not have foreclosure of any lien against the *property* of the McKalips, and any provisions relating to said foreclosure are hereby deleted from the trial court's judgment.

(4) That portion of the trial court's judgment wherein Smith was awarded a personal judgment against the McKalips for $404.19 is hereby deleted.

(5) That portion of the trial court's judgment wherein the Owners McKalip were awarded a personal judgment over against Contractor McCoy in the amount of $4648.35 and interest plus $800.00 attorney's fees has not been appealed from and is therefore not affected by the judgment of this court.

(6) Costs of this appeal are hereby taxed three-fourths (3/4) against Appellee Smith and one-fourth (1/4) against Appellants McKalip.

As reformed, the trial court's judgment is affirmed.

REFORMED AND AFFIRMED.