**THERMO TECH, INC.,**
Plaintiff-Appellee,

v.

**GOODYEAR TIRE AND RUBBER CO., INC., Defendant-Appellant,**

**National Surety Corporation, Defendant-Appellant,**

**Sam Pace, d/b/a Pimco Insulation Contractors & Manufacturers, Defendant-Appellee.**

No. 79–2876.

United States Court of Appeals, Fifth Circuit.
Unit A

May 1, 1981.
Rehearing Denied May 28, 1981.

Michael R. McGown, Beaumont, Tex., for defendants-appellants.

Doug Cherry, Beaumont, Tex., for Thermo Tech, Inc.

George Michael Jamail, Beaumont, Tex., for Sam Pace d/b/a Pimco.

Before AINSWORTH, Circuit Judge, KUNZIG, Judge *, and RANDALL, Circuit Judge.

RANDALL, Circuit Judge:

In this suit two subcontractors (Thermo-Tech, Inc. and Sam Pace, d/b/a Pimco Insulation Contractors & Manufacturers) seek recovery from the owner of an industrial construction project (Goodyear Tire and Rubber Co.), and from a corporate surety of the project (National Surety Corp.), after the default of the contractor (Harold L. Brussard, d/b/a B & H Insulation Co.) on invoices due the subcontractors. Goodyear placed funds representing unpaid invoice amounts and retainages in the registry of the court, and National Surety seeks its attorneys fees and court costs from this fund. The district court granted a final judgment in favor of the subcontractors in the full amounts owed them; the judgment was based both on a mechanics' and materialmen's lien purportedly held by Thermo-Tech and on a bond issued by National Surety. We find both theories to be in error, and we reverse the judgment of the district court.

## I. THE FACTS

In July of 1976 Goodyear solicited bids for the insulation of two large towers in a chemical plant near Beaumont, Texas; Brussard was awarded the contract on his bid of $54,235. Goodyear thereupon submitted a purchase order to Brussard. The order briefly described the requirements of the job and the terms of payment, and included the following sentence: "You are to provide a performance & payment bond at 1% of price, we to pay for cost of bond." [1] On August 11, 1976, a bond was in fact executed by Brussard and National Surety. The bond did not, however, insure the payment of all subcontractors; it was solely a performance bond. As such it provided for the payment of subcontractors only in the

---

* Judge of the United States Court of Claims, sitting by designation.

[1]. A bond of any sort at only 1% of price would be poor protection for either the owner or the subcontractors. Presumably the intended requirement was "100% of price," but no party raises this discrepancy as an issue.

event that they procured a valid lien on Goodyear's property.

Brussard hired Pace to procure certain insulation materials and to perform certain fabrication work on the materials before delivering them to Brussard for use on the Goodyear project. Pace in turn purchased the insulation materials from Thermo-Tech. Goodyear did not deal either with Pace or with Thermo-Tech, and made no direct representations to either of these subcontractors. However, the district court found that Goodyear had by its requirement of a "payment & performance bond" on its purchase order to Brussard implicitly represented to Thermo-Tech and Pace that Goodyear would in fact purchase a payment bond. This conclusion was based on the district court's findings that Brussard used the purchase order to obtain credit from Pace; that both Pace and Thermo-Tech knew of the provision for a payment and performance bond in that purchase order; that both of these subcontractors relied upon that provision in extending credit to Brussard; and that it is "customary in the industry to use such purchase orders to obtain credit from suppliers."

In late August or early September of 1976, Thermo-Tech delivered the insulation materials to Pace. In September of 1976, Pace completed its fabrication of the materials and delivered them to Brussard at the Goodyear plant construction site. Brussard then commenced the installation of the insulation materials; the job was completed on December 14, 1976. At the conclusion of this project, Goodyear owed Brussard $4,746.23 on unpaid invoices, and held unpaid retainages in the amount of $5,581.56.

At this point Brussard still owed Thermo-Tech $17,811.78 for the materials it had provided to Pace. On December 7, Brussard and Thermo-Tech entered into a written agreement pursuant to which all unpaid invoice amounts owed by Goodyear would be paid by Goodyear directly to Thermo-Tech to offset this debt. This agreement was presented to Goodyear on December 7; nevertheless Goodyear paid $3,600 to Brussard on December 14. On January 19, 1977,

Thermo-Tech filed in the office of the county clerk an affidavit of lien with respect to the insulation materials. On February 9, Pace also filed an affidavit of lien with respect to those materials, and on February 10 Pace notified Goodyear of his claim against Brussard; at this time Brussard owed Pace a total of $11,964.03 for its procurement and fabrication work.

In June of 1977, Thermo-Tech brought this suit in a district court of the State of Texas to recover the full amount owed Thermo-Tech by Brussard; the suit named as defendants Goodyear, National Surety, Pace and Brussard. Goodyear then brought a cross-claim in the nature of interpleader and deposited in the registry of the court $4,746.23 as funds due on unpaid invoices and $5,581.56 as contract retainages. Goodyear named the United States as a third-party defendant in this action because of a tax claim the government allegedly held against Brussard. The United States thereupon removed this case to the United States District Court for the Eastern District of Texas, where the suit was tried to the court on September 7, 1978. The United States was not awarded any portion of the interpleaded funds and does not appeal this determination against it. Pace responded to Termo-Tech's suit by itself seeking to recover from Goodyear. Finally, National Surety seeks its attorneys fees and court costs for this action on the basis of an attorneys fee provision in the bond executed by Brussard.

The district court found in favor of Thermo-Tech and Pace, and awarded each of them a judgment against Goodyear and National Surety in the full amount of Brussard's debts to them. The decision of the district court seems to rest on two separate theories. In the first place, the court found that Thermo-Tech had a valid lien on the insulation materials. More precisely, the court found as follows:

> Thermo-Tech, Inc. has a valid lien by reason of Article 5463 and Article 5469 V.A.T.S. pursuant to the notice and assignment of December 7, 1976, in the amount of $3,600 paid to Brussard in

violation of Article 5463(2), and $5,581.56 in retainages, and $4,746.23 in funds yet due on purchase orders.

This lien does not cover the full amount owed Thermo-Tech, but instead seems limited to unpaid invoice amounts, contract retainages, and the amount paid to Brussard in disregard of the agreement between Brussard and Thermo-Tech. The district court did not find any lien in favor of Pace.

In the second place, the district court found that Goodyear and National Surety had contracted for a payment and performance bond and not merely for a performance bond. Because of the subcontractors' reliance on the description in the purchase order, the district court held that Goodyear and National Surety were estopped from denying that the phrase "payment & performance bond" in Goodyear's purchase order to Brussard was incorporated by reference in the bond issued by National Surety. The court further held that since the bond insured the payment of subcontractors it was a third-party beneficiary contract enforceable by subcontractors, and therefore the court allowed Thermo-Tech and Pace to recover directly on the bond.

We find that both of these theories are in error as a matter of law, and we therefore reverse the judgment of the district court.

## II. THE PURPORTED MECHANICS' AND MATERIALMEN'S LIENS

■ The district court held that Thermo-Tech had a valid mechanics' lien by virtue of two separate articles of the Texas Revised Civil Statutes: 5463 (requiring the owner to withhold funds due a subcontractor on receipt of a subcontractor's notice of non-payment after delivery of materials) and 5469 (requiring the owner to retain 10% of funds owed the contractor for the duration of the work and for thirty days thereafter). Tex.Rev.Civ.Stat.Ann. arts. 5463 and 5469 (Vernon 1980 Supp.). The district court erred, for according to the court's findings of fact Thermo-Tech failed in each case to file its affidavit of lien within the time limit required by the article.[2]

In order to establish the owner's liability under article 5463, the subcontractor must first secure a lien in accordance with article 5453, which requires, *inter alia*, that the subcontractor file an affidavit of lien not later than ninety days after the indebtedness has accrued. Since the materials were delivered in September, the indebtedness to Thermo-Tech accrued on October 10. *See* Tex.Rev.Civ.Stat.Ann. art. 5467(1)(c). Thermo-Tech must therefore have filed an affidavit of lien not later than ninety days after October 10; its affidavit was not filed until January 19, 1977, which is beyond the statutory period.[3]

Thermo-Tech's claim under article 5469 fails for a similar reason. In order to establish a claim under that article, the subcontractor must file an affidavit of lien within thirty days after the work by the contractor is completed. The job was completed on December 14, 1976, but Thermo-Tech did

---

**2.** Goodyear and National Surety also argue that Thermo-Tech failed to provide adequate and timely notice of its claims as required by article 5453(2). Since Thermo-Tech failed to file a timely affidavit of lien, however, we need not reach this question.

**3.** Thermo-Tech contends that the *notice* requirement of article 5463 was met by virtue of the assignment it presented to Goodyear on December 7. We need not decide whether this is so, since Thermo-Tech did not timely file an affidavit of lien.

However, one might argue that Thermo-Tech should recover on the strength of the assignment itself whether or not the assignment constituted such notice as is necessary to establish a claim under the mechanics' lien statute. We need not decide whether the assignment itself entitles Thermo-Tech to a greater claim against the interpleaded funds or to a claim against Goodyear for the violation of the assignment, for that theory does not appear to be at issue. The district court's conclusions of law make it clear that its judgment rested on the mechanics' lien statute and on the purported payment bond, and Thermo-Tech does not argue on appeal that relief should have been granted on the basis of the assignment. We note, moreover, that while Thermo-Tech asserted the existence of the assignment in the district court, it seems to have relied on it only for statutory notice under the mechanics' lien statute and for its claim of preference vis-a-vis the government's tax claim. *See, e. g.*, Plaintiff's Second Amended Original Complaint, Record 173 at 174, 179.

not file until January 19, 1977, more than thirty days after this date.

■ Thermo-Tech argues on appeal that the time for filing (at least with respect to an article 5469 claim) is extended because of Goodyear's failure to retain 10% of the contract funds in accordance with article 5469. However, the district court found that Goodyear retained $5,581.56 as retainage, which is more than 10% of the contract price of $54,235. Thermo-Tech does not contest this fact, but argues instead that Goodyear was required to retain for Thermo-Tech's benefit 10% of all funds due the various contractors it hired to do work on the construction project at issue, and not merely 10% of the funds due the particular contractor for whom Thermo-Tech worked. For this proposition Thermo-Tech relies on *Hayek v. Western Steel Co.*, 478 S.W.2d 786 (Tex.1972). While this case does indeed support Thermo-Tech's argument, its holding was overruled by a 1973 statutory amendment. At that time the statute's definitions of "work" and "contract price" were amended to make clear that the owner's retainage requirement under article 5469 is calculated with respect to each individual contractor, and not with respect to the project as a whole. Tex.Rev.Civ.Stat. Ann. art. 5452(2)(d). *See McKalip v. Smith Building & Masonry Supply, Inc.*, 599 S.W.2d 884 (Tex.Civ.App.—Waco 1980); Note, "Duty of Owners Without General Contractors to Establish Mechanics' and Materialmen's Lien Retainage Funds in Texas," 11 Houston L.Rev. 185 (Oct.1973).

■ The district court did not find that Pace had any valid lien against the insulation materials or the funds in the registry of the court. Nevertheless, Pace argues on appeal that he does have a valid lien and that the district court's opinion should be read to implicitly so find. The basis of Pace's claim is not altogether clear, for Pace seems to rely on article 5452, which prescribes the usual mechanics' and materialmen's lien. While article 5452 prescribes a lien for subcontractors as well as for contractors, article 5463(2) makes it clear that the lien is enforceable against the own-

er only to the extent provided in articles 5463 and 5469. In effect, the subcontractor enjoys no direct lien on the owner's property, as does the contractor, but instead must rely on his statutory rights under articles 5463 and 5469 to collect funds due the contractor by the owner. *See* E.L. Youngblood, "Mechanics' and Materialmen's Liens in Texas," 26 Sw.L.J. 665, 676–87 (Oct. 1972).

■ Like Thermo-Tech, Pace failed to meet the requirements either of article 5463 or of article 5469. With respect to article 5463, Pace introduced a notice of claim sent to Goodyear and dated February 10, 1977, along with an affidavit of lien filed on February 9. No claim against Goodyear could be established by these actions, since the notice of claim was sent beyond the time limit stated in the statute. In order to establish a claim under article 5463, the subcontractor must notify the owner in accordance with article 5453(2), which requires notice of the subcontractor's claim within ninety days of the tenth day of the month next following each month in which materials are delivered. Since the insulation materials were delivered in September, notice was due within ninety days of October 10. Pace's notice of February 10 was well beyond this period.

In order to establish a claim under article 5469, the subcontractor must file an affidavit of lien within thirty days of the completion of the contractor's work. Since the job was completed on December 14, 1976, Pace's filing of February 9, 1977 is, like that of Thermo-Tech, beyond the statutory limit.

Pace attempts to distinguish his case from that of Thermo-Tech by virtue of the fact that he supplied scaffolding to Brussard which was used at least until December of 1976. Pace seems to argue that since the supplying of equipment is considered to be the furnishing of material by a materialman within the meaning of the statute, *see* art. 5452(2)(b)(2), he had not supplied all of his materials until December and therefore no applicable filing period began to run before that date. This analysis is clearly misplaced with respect to article 5469,

which requires the affidavit to be filed within *thirty days* of the completion of the *contractor's work*; the date on which materials were furnished is irrelevant. The situation is more complicated with regard to article 5463, for the lien filing period under that article is indeed tied to the date of the subcontractor's final delivery of materials rather than that of the contractor's completion of work. However, the *notice* requirement of article 5463 is derived from article 5453(2), which dates the period during which the owner must be notified of claims from "*each* month in which the claimant's . . . material [was] delivered *in whole or in part*" (emphasis added). In order to invoke the benefits of article 5463, a subcontractor must notify the owner of his claim within ninety days of the tenth day of the month next following *each* month in which any portion of the subcontractor's material is furnished; when subcontractors furnish materials over a period of several months, the article in effect requires *periodic* notice to the owner of the subcontractor's claim. *See* E. L. Youngblood, *supra*, at 678–79. Pace did not notify Goodyear of its claim within the period tolled by his delivery of the insulation materials in September, and consequently did not perfect a claim under article 5469. We must conclude therefore that Pace, like Thermo-Tech, has perfected no claim against Goodyear under the Texas mechanics' and materialmen's lien statute.

## III. RECOVERY ON THE PAYMENT BOND BY ESTOPPEL

The district court also granted a judgment against Goodyear and National Surety on the basis of a purported payment bond which Goodyear did not actually purchase but which the court held Goodyear and National Surety were estopped from denying. As discussed in Part I of this opinion, the court's decision rested on Goodyear's inclusion in its purchase order to Brussard of the requirement that Brussard execute at Good-

year's expense a "payment & performance bond." Although Goodyear made no direct representation to any subcontractor, the court found that the payment bond requirement in the purchase order was an implicit representation to subcontractors that Goodyear would provide a payment bond, and the court concluded on this basis that Goodyear and National Surety should be estopped from denying that the bond actually purchased was only a performance bond which provided no direct recourse for subcontractors.[4]

We have serious misgivings about the district court's conclusion that the owner's mere act of issuing to a contractor a purchase order with the requirement of a "payment & performance bond" is an implicit representation to subcontractors with whom the owner has not dealt that some form of payment bond will be procured. Even if we accept this finding *arguendo*, however, we surely must disagree with the court's further conclusion that Goodyear and National Surety must consequently be held by equitable estoppel to a payment bond enforceable by all subcontractors. In order to establish the basis for estoppel under Texas law, the plaintiff has the burden of proving a number of separate elements. One of these requirements is that the party claiming the estoppel was not only without knowledge of the misrepresented fact, but also was unable in the exercise of due diligence to ascertain the truth of the representation on which he relied. *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 838 (Tex.1968). In the context of this case, the subcontractors must demonstrate that they could not reasonably have determined the accuracy of the owner's implicit representation regarding its procurement of a payment bond. This burden has not been met. In the first place, the subcontractors could easily have determined whether a payment bond had indeed been purchased

4. The district court did not state why it held *National Surety* to be estopped on the basis of a representation made only by *Goodyear*. This is a major gap in the district court's reasoning, since the court granted relief on the bond itself and not merely against the party responsible for the representation. Since we find that estoppel was not proper in this case, however, we need not resolve this mystery.

by contacting Goodyear directly. Nevertheless neither Thermo-Tech nor Pace made any effort to contact Goodyear with regard to the bond. This failure is particularly glaring with respect to Thermo-Tech, none of whose agents even saw the purchase order. In the second place, the subcontractors could easily have ascertained the nature of the bond by asking Brussard for a copy of it or by asking Brussard the name of the surety and then contacting the surety directly. Nevertheless neither Thermo-Tech nor Pace made any effort to contact Brussard or National Surety with regard to the bond. We think a subcontractor who chooses to rely on a payment bond which he has never seen, purchased by an owner with whom he has not communicated, and issued by a surety he has never sought to contact, has an obligation to exercise greater diligence than this to ascertain the true nature of the bond.

We recognize that under Texas law there are some circumstances in which equitable estoppel may be asserted despite the failure to pursue easily accessible means to ascertain the truth. These circumstances arise when on the facts of the case a person exercising due diligence would *not* have taken the obvious steps to check the representation, *e. g.*, where the party making the representation encourages reliance on his statement and there is no reason to be suspicious or disbelieving. *See Cooper Petroleum Co. v. LaGloria Oil & Gas Co.*, 436 S.W.2d 889, 894 (Tex.1969); *Traylor v. Gray*, 547 S.W.2d 644, 653 (Tex.Civ.App.— Corpus Christi 1977, writ ref. n.r.e.). One might argue that a subcontractor acting with due diligence would have been induced by Goodyear's representation and by Goodyear's immediate access to the facts to rely on Goodyear to the exclusion of its own investigation of the facts. We cannot accept this analysis, however, for Goodyear's supposed representation must be read in the context in which it was made. The fact that Goodyear required its contractor to execute a payment bond does not mean that Goodyear was bound to accept and to pay for the bond. The bond requirement is intended to protect the owner from the

contractor's default, *i. e.*, it is a contractual provision that is included in the purchase order for the benefit of the owner. Accordingly, the requirement may be waived by the owner. *See, e. g., Gulf Production Co. v. Continental Oil Co.*, 139 Tex. 183, 164 S.W.2d 448 (Tex.1942). Thus, Goodyear's actions constitute at most an indirect representation to subcontractors of its *present intent* to require the contractor to execute a payment bond. Whether a payment bond was actually purchased was a decision which the purchase order contract allowed Goodyear to make. We think a subcontractor exercising due diligence would have taken advantage of his easy access to the facts and made some effort to determine whether a payment bond had in fact been purchased. In these circumstances the failure of the subcontractors to ascertain the truth of the representation on which they relied, and in particular to determine the precise nature of the so-called "payment bond," was an unreasonable reliance on the limited representation which we have assumed, *arguendo*, was made by the owner. We therefore cannot agree with the district court's conclusion that Goodyear and National Surety should be estopped from denying the existence of a payment bond. Accordingly, Thermo-Tech and Pace are limited to recovery under the bond actually purchased by Goodyear. That bond does not provide for their payment absent a valid lien, and therefore neither subcontractor can recover on the bond.

## IV. ATTORNEYS FEES AND THE DISBURSEMENT OF FUNDS IN THE REGISTRY OF THE COURT

National Surety filed a cross-claim against Brussard for the amount of its attorneys fees in this action. Its claim is based on a provision in the bond signed by Brussard pursuant to which Brussard indemnifies the surety against all losses, including attorneys fees and court costs, arising out of. the surety's defense of claims under the bond. In particular, National Surety has demanded $5,250 in attorneys fees (75 hours of work at $70 per hour) and

$162 in court costs. Brussard did not answer this cross-claim, and for some inexplicable reason neither Thermo-Tech nor Pace has contested either National Surety's right to attorneys fees or the specific amount it has claimed. Without reaching the merits of National Surety's claim, therefore, we conclude that National Surety is entitled to recover from Brussard a total of $5,412 in attorneys fees and court costs.

Since neither subcontractor perfected a claim against either the unpaid invoice amount or the statutory retainage, the fund consisting of these amounts (which Goodyear deposited in the registry of the court) should be divided among all creditors of Brussard who are parties to this suit. Thus, the fund should be distributed to Thermo-Tech (claiming $17,811.78), Pace (claiming $11,964.03) and National Surety (claiming $5,412) in the proportion which each of their debts bears to the total owed the three of them. Accordingly, we reverse the judgment of the district court and remand this case for entry of judgment consistent with this opinion.

REVERSED AND REMANDED.