**M.S. FOUNDATIONS, INC., Appellant,**

v.

**PERMA–CRETE BUILDING SYSTEMS, INC., et al., Appellees.**

**No. B14–83–053CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 19, 1984.

Rehearing Denied Feb. 23, 1984.

Brian E. Bro, Cecilia Egan, Bro & Short, Houston, for appellant.

Michael G. Tapp, James S. Kelly, Robert W. Jones, Liddell, Sapp, Zivley, Brown & LaBoon, Richard G. Sedgeley, Houston, for appellees.

Before PAUL PRESSLER, ROBERTSON and ELLIS, JJ.

## OPINION

ROBERTSON, Justice.

This is an appeal from a take nothing judgment rendered on motions for directed verdict. At issue in this appeal is the propriety of such action by the trial court. We affirm.

Badger, Emmanouil, and McDaniel, hereinafter referred to as "owners," contracted with Perma-Crete to construct a building on owners's property. The financing agent was Texas Commerce Bank—Lakeside, hereinafter referred to as "bank." M.S. Foundations, hereinafter referred to as appellant, a subcontractor of Perma-Crete, entered into two contracts with Perma-Crete to do certain concrete work. Work under the first contract was completed and appellant was paid. The second contract, totalling some $28,000, was for concrete paving around the building. Appellant was not paid under this contract, and that is the basis of this suit. In 1980, prior to the trial against the owners and the bank in 1982, an agreed interlocutory judgment was entered in favor of appellant and against Perma-Crete. Appellant proceeded to trial on its sixth amended petition alleging: (1) liability of the owners in *quantum meruit;* (2) estoppel by owners to assert limitations on their liability; (3) foreclosure of statutory and constitutional materialman's lien; (4) "civil conspiracy and interference" with contract between appellant and Perma-Crete; and (5) "breach of contract by [bank] ... and civil conspiracy between [bank] and owners to deny rights of [appellant]."

In ten of appellant's eleven points of error, it asserts there was sufficient evidence to support its cause of action, and therefore, the action of the court in granting a directed verdict in favor of appellees was error. Appellant correctly recognizes that "for the trial court's ruling to be correct, as to each theory of recovery asserted by [appellant], there must be at least one fact proposition, constituting a component element ... as to which the plaintiff's evidence is so meagre ... that reasonable men could not differ as to the conclusion that such proposition is not established," citing *Mumphord v. First Victoria National Bank*, 605 S.W.2d 701 (Tex.Civ.App.—Corpus Christi 1980, no writ). Appellant also correctly recognizes the rule this court must follow in reviewing the propriety of the trial court action, i.e. we must "view the evidence in the light most favorable to appellant, the losing party in the trial court, to indulge against the judgment every inference that can be possibly drawn from the evidence, and to disregard all evidence and inferences adverse to Appellant," citing *Rogers v. Searle*, 533 S.W.2d 433 (Tex.Civ.App.—Corpus Christi), rev'd on other grounds, 554 S.W.2d 114 (Tex. 1976). Finally, in addressing appellant's evidentiary points, it is appropriate to recognize the general rule that "if the probative force of evidence be so weak that it raises only a surmise or suspicion of the existence of the fact sought to be established, that evidence in legal contemplation is no evidence at all and will not support a finding which comprehends the existence of a disputed fact." *Hamilton v. Newbury*, 412 S.W.2d 801 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.).

In its first point, appellant contends the trial court erred in granting a directed verdict because there was ample evidence to support the cause of action alleged that the owners are liable to M.S. Foundations, Inc., under the Mechanics and Materialman's lien statutes. In argument under this point, it appears to be appellant's conten-

tion on appeal that it was entitled to a lien against the owners' property for its pro-rata share of the lien claimant's fund of ten percent (10%) of the contract price which is required to be retained by the owners in accordance with TEX.REV.CIV.STAT. ANN. art. 5469 (Vernon Supp. 1982–1983). So far as we are able to determine from the record, this issue was never presented to the trial court. Appellant's petition sought only to establish and foreclose on the lien in the total amount of $28,310, and it did not plead alternatively for the amount of $19,014.60 which was 10% of the total contract price.

■ In the owners' second amended answer, they specifically pled they had "met all their obligations under their contract with Perma-Crete Building Systems, Inc. particularly with regard to setting aside or holding back the proper amount of retainage with regard to sub-contractors," and asserted "any recovery due Plaintiff as relating to defendants is limited to the said retainage, and the amount of Plaintiff's lien filed pursuant to said foundational work." We agree that if appellant had made the proper proof, it would have been entitled to recover from appellee owners a portion of the money owed it by the general contractor (Perma-Crete), limited by 10% of the contract price or its pro-rata portion thereof. *McKalip v. Smith Building & Masonry Supply, Inc.*, 599 S.W.2d 884 (Tex.Civ.App.—Waco 1980, writ ref'd n.r. e.). However, since this issue was not raised in the trial court, appellant is not in position to now complain for the first time on appeal. *Greater Fort Worth and Tarrant County Community Action Agency v. Mims*, 627 S.W.2d 149 (Tex.1982). While it is true the judgment contains the following finding:

> Plaintiff introduced no evidence to raise any issue that Defendants Warren Badger, A.Z. Emmanouil and W.W. McDaniel are liable to the Plaintiff for any sum of money *other than the statutory percentage held by them as retainage to satisfy liens* (emphasis ours)

and in appellant's response to defendant's motion for judgment, it objected because the judgment made "no provision for judgment or execution" for the amount of retainage, we hold this does not preserve the matter for our review. The point is one of evidence, and there was no evidence before the court upon which appellant's pro rata share of the retainage could be determined. We hold that in the absence of proof by the lien claimant of the amount of the retainage to which it was entitled, the court could not make provision for its recovery from such retainage fund. Its first point of error is overruled.

■ In its second point, appellant contends it was error for the trial court to grant the instructed verdict because there was ample evidence to support its cause of action against the owners in *quantum meruit*. Other than citing authority establishing the four component elements of *quantum meruit*, appellant cites no authority supporting its argument that it, as a subcontractor with no privity of contract with the owners, is entitled to recover the total of its contract price on such theory. We agree with the appellees (owners) that appellant is precluded by TEX.REV.CIV. STAT.ANN. arts. 5463(2), 5469 (Vernon Supp.1982–1983) from recovering "in the manner and amount" sought by appellant. *McKalip v. Smith Building & Masonry Supply, Inc., supra.* The same reasoning under the first point of error is likewise applicable here. We are bound by the record as it comes to us, and if the proper appellate predicate has not been laid, we cannot grant relief. Appellant's second point of error is overruled.

■ In its third point, appellant contends it was error for the trial court to grant the instructed verdict because there was ample evidence to support its cause of action against the owners based upon fraud. Appellant lists the six elements of fraud as set out by *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex.1977). The allegations of the petition upon which appellant sought to prove fraud were that the owners permitted appellant "to continue to

perform work on their property after they had decided not to pay either contractor or plaintiff for the work performed." In its argument, appellant states "[t]hat the owners had taken action to prevent M.S. Foundations, Inc. from being paid for its work is clearly a material fact." If we understand appellant's argument, this was the ultimate fact to be proved. Appellant then reasons that the action of the owners in representing to Mr. Eddie [a representative of appellant] that they were "well satisfied" with the work which M.S. Foundations, Inc. was doing, must be, in light of reasonable business practice, regarded as a positive, untrue statement. First of all, there is no proof of the ultimate fact sought to be proved. Appellant cites us to no place in the record where this was proven, and we cannot find such proof. While it is true the owners instructed the bank to "recognize no further progress payments requested by the contractor until same have been examined and approved by" them, this is *not* proof the owners had taken action to prevent appellant from being paid, and consequently, a jury finding in favor of appellant could not be supported by this evidence. *Texas Sling Company v. Emanuel*, 431 S.W.2d 538 (Tex.1968). Appellant's third point of error is overruled.

In its fourth point, appellant contends the court erred in granting the instructed verdict because there was ample evidence to support its cause of action against the owners, alleging that due to the owners' actions, the owners should be estopped to assert any otherwise applicable limitation of their liability to appellant. Appellant admits in its brief that the elements of equitable estoppel are substantially the same as the elements of actionable fraud. Fraud is an essential element of both. For the same reason we denied appellant's third point, we likewise deny the fourth.

■ In its fifth point, appellant contends it was error to grant the instructed verdict because there was ample evidence to support its cause of action against the owners for tortious interference with the contract between appellant and Perma-Crete. In its argument, appellant correctly recognizes the elements of the cause of action, as set forth in *Armendariz v. Mora*, 553 S.W.2d 400 (Tex.Civ.App.—El Paso 1977, no writ). However, the problem is one of evidence. Appellant argues the requirement that the act of interference be wilful and intentional was established by the introduction into evidence of the letter from the owners' attorney to the bank. In that letter, the bank was directed not to pay any further draw requests submitted by Perma-Crete. We disagree. First, as we previously pointed out, the bank was instructed "to recognize no further progress payments requested by the contractor until same have been examined and approved by" the owners. We refuse to equate this action with wilful and intentional conduct, especially in view of the fact that the completion date called for under the terms of the contract between the owners and Perma-Crete was, at the date of the instructions, some six months overdue. Appellant's fifth point of error is overruled.

In its sixth and seventh points, appellant contends the granting of a directed verdict in favor of the owners and the bank was error because there was ample evidence to support its cause of action against both the owners and the bank, based upon allegations of conspiracy to tortiously interfere with the contract. We believe what we have said above in reply to the fifth point disposes of these two points. Appellant relies upon the same "evidence" to show "tortious interference" in all three points. It then argues under these two points, "[f]or the Owners to successfully interfere with the sub-contract between M.S. Foundations, Inc. and Perma-Crete, they needed the cooperation of the Bank." Appellant then argues the bank became a conspirator by "cooperating" with the owner in not making any more payments to Perma-Crete and in making later payments to a new contractor who completed the job. We are not impressed with this argument. If the evidence upon which appellant relies is insufficient to constitute tortious interference with the contract, we fail to see how evidence, if any, of an agreement between

two or more persons to do the same acts could somehow create a cause of action. These points are overruled.

Appellant's eighth and ninth points are worded identically and contend it was error to grant the instructed verdict because there was ample evidence to support the cause of action against both the bank and the owners for entering into a conspiracy to defraud appellants. In support of these points, appellant merely incorporates the argument and authorities contained in its third, sixth, and seventh points. Following this lead, we deny these points upon the same reasoning used in the referenced points.

■ In its tenth point, appellant contends it was error to grant the instructed verdict because there was ample evidence to support its cause of action against the bank for fraud. Since work had begun on the construction project prior to the time the bank had recorded its lien instruments securing the loan, the bank required the execution of lien subordination agreements by all subcontractors. Such a lien subordination agreement was signed by appellant. If we properly understand, appellant's argument is that he relied upon the representation in the lien subordination agreement that the bank was advancing the money for the project construction. Appellant argues when the bank received the instructions "to recognize no further progress payments," the bank "was then in possession of facts that made the Bank's representation in the Waiver false" and the "Bank then had the duty to inform [appellant] that the draw request which would include the work done by [appellant] would not be paid." Appellant asserts this conduct amounted to fraud. We do not agree. First, the evidence fails to show the bank ever met with or made any representation to appellant. The lien subordination agreement, upon which appellant relies, is a unilateral agreement signed only by the appellant. The statements made therein cannot be attributed to the bank. However, even if they could be, the statements were not false because the bank was in fact obligated to loan up to $190,000 on the construction project. It appears the basis for appellant's claim is that once the bank became aware that no further progress payments were to be made until approved by the owners, it had a duty to notify appellant, and its failure to do so constituted fraud. Any such duty to protect appellant's interest would impose on the bank the duty of a trustee. This contention has been previously rejected in *Coke Lumber & Mfg. Co. v. First National Bank in Dallas*, 529 S.W.2d 612 (Tex.Civ.App.—Dallas 1975, writ ref'd) and *Knight Construction Co., Inc. v. Barnett Mortgage Trust*, 572 S.W.2d 381 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.). This point is overruled.

■ Finally, in its eleventh point of error appellant contends the court erred by entering a take nothing judgment against appellant in that the agreed interlocutory judgment previously entered between appellant and Perma-Crete "conclusively established [appellant's] right to a final judgment against Perma-Crete Building Systems, Inc." The judgment does not speak to the previously entered agreed interlocutory judgment nor does it attempt to dispose of the claim of appellant against Perma-Crete. The judgment was entered in response to defendant's motion therefor. While appellant filed a response to the motion objecting to the entry of the proposed judgment because it made no reference to the previously entered interlocutory judgment, we do not believe this presents any alleged error for our review. Appellant is not precluded from taking the appropriate action to make that judgment final. Accordingly, this point is overruled.

The judgment is affirmed.