**AMBASSADOR DEVELOPMENT
CORPORATION and Opus I,
Ltd., Appellants,**

v.

**Juan VALDEZ, d/b/a JV Construction
Company, Appellee.**

**No. 2–88–009–CV.**

Court of Appeals of Texas,
Fort Worth.

June 14, 1990.

---

Allen & Knuths, Alan S. Notinger, Dallas, for appellants.

Kuhn, Fishman, Jones & Walsh, Bill Khun, Dallas, for appellee.

Before HILL, LATTIMORE and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Appellee and appellant Ambassador Development Corporation ("Ambassador") entered into two written contracts whereby appellee, as subcontractor, agreed to perform work for Ambassador, the general contractor of a real estate construction project, on behalf of appellant Opus I, Ltd. ("Opus"), the owner of the Lewisville Business and Self–Storage Park. In the first contract, dated December 18, 1985, the parties contracted for "Excavation of site work and construction of building pads in accordance with plans and specifications" to be provided by appellee for the sum of $94,000. Soon thereafter, on February 6, 1986, the parties contracted for "completion of all concrete foundations, concrete paving, retaining walls, and tilt wall, including forms and rebar" for the amount of $594,850. Additionally, it is undisputed that appellants subsequently requested appellee to perform extra work which was not included in the concrete contract. When appellee was not paid in full for this additional work, he filed suit against Ambassador asserting a claim for the unpaid amount. Appellee also sought judicial foreclosure of a mechanic's and materialman's lien filed against the real property owned by Opus. Ambassador counterclaimed for defective and incomplete concrete work, and defective earthwork. Opus counterclaimed for cancellation of the asserted lien.

The jury found that appellee substantially performed his obligations for concrete work, he did not fail to perform all earthwork under his contract in a good and workmanlike manner, and appellants did not incur any costs in repairing or remedying appellee's concrete work. The jury further responded that appellee's concrete contract price plus authorized "extras" was $698,193.49, and that appellants had paid appellee and his suppliers $613,333.62. The court entered judgment on the verdict in favor of appellee against Ambassador in the amount of $85,859.87,[1] plus $5,151.59 prejudgment interest, and entered judgment against Opus for foreclosure of appellee's mechanic's and materialman's lien in the amount of $91,011.46.

We affirm that portion of the trial court's judgment which awards appellee $91,011.46 in damages against Ambassador. We modify that portion of the judgment which imposes, and orders foreclosure on, a statutory mechanic's and materialman's lien on the property of Opus, so as to delete the $5,151.59 award of prejudgment interest from the amount of the lien. Lastly, we remand the cause to the trial court on the sole issue of the amount, if any, Opus is entitled to recover as attorney's fees attributable to defending appellee's claim that prejudgment interest should be included in the amount of the statutory lien. As modified, the remainder of the judgment is affirmed.

APPELLANTS' CONTENTIONS

Appellants have raised twenty points of error contending: the jury's findings of "none" for costs of completion and correction cannot support a judgment for substantial performance; the jury's findings of substantial performance and zero costs of

---

1. We note there is a $1,000.00 difference between the trial court's judgment of $85,859.87, and the net result of the jury's answers to the special issue regarding the total concrete price minus total payments to appellee and his suppliers. However, inasmuch as none of the parties mention or complain of this monetary difference, we are not called upon to reconcile these figures.

completion and correction are in fatal conflict; there was no evidence, or alternatively insufficient evidence, to support the jury's findings of substantial performance, the zero costs of completion, the zero costs of correction, the amount of any trapped funds, and the amount of any statutory retainage share; the evidence established as a matter of law that $632,835.28 (as opposed to the jury's finding of $613,-333.62) was the total amount previously paid to appellee; appellee failed to perform all earthwork in a good and workmanlike manner, or alternatively the jury's findings to the contrary were against the great weight and preponderance of the evidence; evidence concerning an alleged oral modification of the concrete subcontract was erroneously admitted; and any lien claim of appellee's cannot exceed the amount of any trapped funds plus any statutory retainage share.

*Substantial Performance*

In their first and second points of error, appellants contend the trial court erred in entering judgment for appellee and for lien foreclosure, claiming: the jury's findings of "none" for costs of completion and correction cannot support the judgment on a substantial performance claim; and the finding of substantial performance is in fatal conflict with the findings of zero costs of completion and correction. Basically, appellants assert that appellee's failure to secure jury findings of specific monetary amounts regarding the costs of correction and completion, constitutes a failure of proof of the substantial performance claim and appellee should take nothing with respect to such claim. The charge instructed the jury that " 'substantial performance' means performance of the essential elements of a contract, provided that the defects in performance do not prevent the parties from accomplishing the purpose of the contract."

Appellee maintains he met his burden of proof under his substantial performance cause of action, and the jury's zero answers to costs of completion and correction of defects are not in conflict with the jury's finding of substantial performance by ap-

pellee. Appellee's theory is that any costs allegedly incurred by appellants in completing or correcting the work in question were: (a) not attributable to appellee's work; (b) so trivial as to require no additional expenses; and (c) not true costs under appellee's subcontract, and the jury rightfully did not charge these costs to appellee.

Appellants place primary reliance upon *Vance v. My Apartment Steak House, Etc.,* 677 S.W.2d 480 (Tex.1984). In that case the Texas Supreme Court restated the well-established Texas rules concerning the measure of damages in a building contract dispute: (1) When a contractor has substantially performed a building contract, he is entitled to recover the full contract price less the cost of remedying those defects that are remediable; (2) the measure of damages for an owner when a contractor is alleged to be in breach of a construction contract is the cost of completing the job or of remedying those defects that are remediable; and (3) if only part of the contract price has been paid to the contractor, the amount of the owner's damages is credited against the balance of his payments still unpaid. *Id.* at 481–82. The court further discussed the doctrine of substantial performance, stating:

The *Atkinson* [*Atkinson v. Jackson Bros.,* 270 S.W. 848, 850 (Tex.Comm'n App.1925, holding approved)] court correctly stated that the doctrine of substantial performance is merely an equitable doctrine that was adopted to allow a contractor who has substantially completed a construction contract to sue on the contract rather than being relegated to his cause of action for quantum meruit. The doctrine does not, however, permit the contractor to recover the full consideration provided for in the contract. *By definition, this doctrine recognizes that the contractor has not totally fulfilled his bargain under the contract—he is in breach.* Nonetheless, he is allowed to sue on the contract, but his recovery is decreased by the cost of remedying those defects for which he is responsible. "To allow full recovery without deductions for defects is to

award compensation for something [the contractor has] not done." *Id.* at 851.

The court in *Atkinson* announced the following rule "for measuring compensation or damages ... to both the contractor and the owner:"

> In cases of substantial performance, the amount recoverable by the contractor is the contract price, less the reasonable cost of remedying the defects or omissions in such a way as to make the building conform to the contract. This deduction measures the damages allowed the owner for failure on the part of the contractor to fully comply with the specifications.

*Id.* at 482 (emphasis added). The *Vance* court then re-affirmed its prior holding in *Atkinson*, and opined:

> Therefore, when a breaching contractor *brings suit* to recover for his substantial performance and the owner alleges remediable defects in the construction, the contractor is required to prove that he did substantially perform, the consideration due him under the contract, and the cost of remedying the defects due to his errors or omissions.

*Id.* at 483 (emphasis in original). Accordingly, in the instant case appellee had the burden of proving he did substantially perform, the amount due him under the contract, and the reasonable cost of remedying the defects alleged by appellants to be due to appellee's errors or omissions. *See Vance*, 677 S.W.2d at 482–83; *Zion Missionary Baptist Church v. Pearson*, 695 S.W.2d 609, 611 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

The initial issue for our determination is whether a party seeking recovery on a substantial performance theory must secure a jury finding of more than "none" regarding costs of remedying or correcting alleged defects or omissions in that party's work. We have not found, nor been referred by the parties, to any case specifically addressing this exact issue. However, in support of his response that the jury's zero answers are not in conflict with the jury's finding of substantial performance, appellee relies upon two cases that are factually similar to the case at bar.

In both *Dietz Memorial Co. v. Texas Steel Bldg. Co.*, 578 S.W.2d 872, 875 (Tex. Civ.App.—Waco 1979, writ ref'd n.r.e.), and *Beck v. Lawler*, 422 S.W.2d 816, 818 (Tex. Civ.App.—Fort Worth 1967, writ ref'd n.r. e.), the jury found that the contractor had substantially performed under the terms of the construction contract, and further found the cost of remedial work was "none." The points of error in those cases did not address the issue with which we are confronted, but dealt exclusively with the sufficiency of the evidence to support the judgments awarding the full balance of the contract price, and sufficiency of the evidence to support the jury's answers that no remedial work was necessary (issues which will be dealt with subsequently in the instant opinion). *See Dietz*, 578 S.W.2d at 875; *Beck*, 422 S.W.2d at 818. Nonetheless, we find these cases supporting authority for appellee's claim that he did not fail to meet the burden of proof on his substantial performance claim simply because the jury answered "none" as to costs of completion and correction. Both cases quote the following rule of law from the seminal case of *Atkinson v. Jackson Bros.*, 270 S.W. 848 (Tex.Comm'n App.1925, holding approved):

> The doctrine of substantial performance necessarily includes compensation for all defects which are not so slight and insignificant as to be safely overlooked on the principle of de minimis non curet lex.[2]

*Id.* at 851; *see Dietz*, 578 S.W.2d at 875, and *Beck*, 422 S.W.2d at 818. We are cognizant of the following contrary language in *Zion Missionary Baptist Church*, 695 S.W.2d at 612:

> ["Substantial performance" in building contracts] does not mean "complete for all practical purposes." It does not refer to a situation where the contractor's performance is fully complete and fully sat-

---

**2.** Black's Law Dictionary defines the term "de minimis non curat lex" as "The law does not care for, or take notice of, very small or trifling matters. The law does not concern itself about trifles." BLACK'S LAW DICTIONARY 482 (4th ed. 1968).

isfactory; saving such trifling and insignificant aspects as to which no reasonable owner similarly situated would have ground to object. *It is not a de minimus test.*

*Id.* (emphasis added). However, we find this commentary to be dicta inasmuch as the *Zion* case was reversed for the reason that no issue had been submitted to the jury regarding the cost of remedying the contractor's defects and omissions. *Id.* at 611–13.

Appellants contend that the *Atkinson* language predates and is contrary to the Texas Supreme Court's express holding in *Vance* that a substantial performance claimant is by definition in breach and cannot be allowed a full recovery without deduction of the remedial costs, *see Vance,* 677 S.W.2d at 482, and to the extent the language of *Dietz* and *Beck* (and presumably *Atkinson* ) conflicts with *Vance,* the language should not be considered as supportive of appellee's theory of recovery. Although *Dietz* and *Beck* do predate *Vance,* the above-quoted language is from *Atkinson,* which case was extensively discussed in *Vance.* The *Vance* court expressly declined to change the *Atkinson* rule regarding which party has the burden of proof to establish the cost of remedying alleged defects in construction. *Vance,* 677 S.W.2d at 482. Because the trial court in *Vance* granted an instructed verdict and special issues were never submitted to the jury, the supreme court was never presented with the issue currently raised by appellants herein. However, the quoted language from *Atkinson* has never been overruled and we disagree with appellants that the holdings of *Dietz* and *Beck* were altered by *Vance.*

■ Accordingly, we hold that the jury's answers in the instant case of "none" regarding costs of completion and correction do not in and of themselves preclude appellee from obtaining the full balance due on the contract. We further hold there is no fatal conflict between the jury's finding of substantial performance and its findings of zero costs of completion and correction. Points of error one and two are overruled.

Appellants' points three through eight challenge the legal and factual sufficiency of the evidence to support the jury's findings of "none" regarding costs of completion and correction, and the finding that appellee substantially performed his obligations for concrete work.

Appellee testified that appellants requested him to perform extra work which was not included in the concrete contract, and that the total of this additional work was $103,343.49. With regard to this extra work, Steven Warnick was involved with the construction project in the capacity of owner's representative. He acknowledged that appellee had some "extras" added to this concrete contract, and that this was done by agreement between Ambassador and appellee. Warnick also stated:

> As the job was going on we would—certain additional items of work would come up, and we would discuss the prices of them, Mr. Valdez would write them out on his form and we would look at them, we would agree upon them, as we got to the end of the job and when all the extras were said and done, itemized and then we went over them, there were a few off here and there, *but substantially we agree with his list of extras,* that's not a dispute.... [3] [Emphasis added.]

Although the specific requested "extras" are not in dispute, the evidence was much disputed regarding appellants' allegations they were required to expend significant sums of money to correct and complete appellee's work. All parties presented the jury with various witnesses to substantiate their respective positions concerning the work performed by appellee.

Alton Brown was an independent contractor hired by Ambassador as the contract project manager; his sole purpose was to oversee the general construction of the project. He testified that the sum of $22,000 had to be expended to *correct* appellee's work, and $59,000 was the amount expended by appellants to *complete* the

---

**3.** Warnick did *not* agree with appellee's testimony that a second face of a retaining wall was an

"extra." This issue is discussed in detail in point of error seventeen of this opinion.

items appellee failed to finish. Brown testified in detail concerning numerous aspects of appellee's work that were either deficiently performed, or neglected altogether. However, Brown admitted that one of these problems occurred because of miscalculation of the civil engineer on the job, and one resulted from appellee performing the task as specified by appellants' architect.

When Brown was asked if the concrete work on the project was completed, he replied:

> A. The vast majority of it was completed, with very few exceptions, by sometime around the end of August; there were some small parts we had to go back and correct, and some parts that had not been poured, but as a general rule, the biggest part of it had been completed by then.

Appellee's lawsuit sought payments for work performed during July and August of 1986. Brown also testified that appellee "substantially finished the job."

Appellee introduced testimony through several witnesses, including that of appellee himself, who addressed each of the specific items mentioned by Brown. Appellee testified that when he was asked to leave the project he had completed all the items that were called for under the contract, with the exception of one concrete slab. Juan Compos, appellee's foreman on the concrete project, testified that when he left the project on June 20th the concrete was ninety percent complete. Compos also stated that after appellee left the project in August, no one else came in to re-do appellee's work, and Compos was paid by Brown to re-do one drain ($300.00) and to put in the concrete for two garbage dumpsters ($500.00).

■ In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988) (per curiam); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951) (per curiam). If there is

any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate*, 244 S.W.2d at 661–62.

■ An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

■ Findings of fact in a jury trial are within the exclusive province of the jury. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex.1986). "It is elementary that juries are the exclusive judges of the credibility of the witnesses and the weight to be given their testimony." *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). It was within the jury's province in the instant case to weigh all the evidence, and to decide what credence should be given to the whole or to any part of the testimony of each witness. *See Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194, 199 (1952). The jury was the judge not only of the facts proved but of the inferences to be drawn therefrom, provided such inferences were not unreasonable. *See id.*

■ As stated previously, the evidence was decidedly conflicting on the issue of whether appellants were required to expend additional sums to complete or correct appellee's concrete work. Having reviewed the evidence in the instant case pursuant to the above-stated standards of appellate review, we find sufficient evidence to uphold the jury's findings of "none" regarding costs of completion and correction, and the jury's finding of substantial performance by appellee. Points of error three through eight are overruled.

*Payments To Appellee*

■ In points of error fifteen and sixteen appellants challenge the jury's finding that $613,333.62 constituted the amount of

total payments to appellee and appellee's suppliers. Specifically, appellants contend the evidence established this figure as a matter of law to be $632,835.28, or alternatively, that the jury's finding is against the great weight and preponderance of the evidence.

Between the time period September 10, 1986 and October 6, 1986, Ambassador made payments totaling $19,501.66 to four suppliers. Appellants maintain these payments were for supplies used by appellee prior to his leaving the project, and the payments accrued to the benefit of appellee. Appellants also allege the payments were made in accordance with a prior arrangement between Ambassador and appellee. Appellee, however, responds that the payments were either not approved and acknowledged by him, or were for work or materials not included within his contract. The jury did not include this $19,501.66 amount in its determination of how much money appellants had previously paid appellee. We are faced with conflicting evidence in the record from various witnesses concerning whether or not these payments were properly attributable to work performed by appellee's subcontractors (or were payments for supplies used by appellee or his subcontractors). The jury heard all the evidence and observed the demeanor of the witnesses. Applying the appropriate standards of review, *see Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989) and *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam), we hold appellants have not established as a matter of law that the $19,501.66 amount was properly attributable to appellee, nor have they established that the jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we overrule appellants' points of error fifteen and sixteen.

*Oral Modification of Concrete Contract*

In their seventeenth point of error, appellants claim the trial erred in admitting evidence of an alleged oral modification of the concrete subcontract. As previously stated, the written concrete contract between appellee and Ambassador was for $594,850. This amount was the total of estimates for six specific items listed in the contract. One of these items was listed as:

Retaining Wall 3,536 SF @ 5.00/SF = 17,680.00.

During trial, appellee introduced evidence of certain "extras" that he was requested to furnish, that had not been included within the written concrete contract. One these extras was the second face of a double-sided retaining wall. This item was designated in appellee's Exhibit 4A as:

aa) Additional expenses in construction of retaining walls on Buildings 1 and 6; $17,680.00.

Appellee also introduced a letter from the Project Manager, dated July 22, 1986, which acknowledged that "Ambassador fully intends to honor these contracts along with any approved revisions."

■ Appellants complain that evidence of the additional $17,680.00 expense listed in Exhibit 4A was not admissible because it violated the parol evidence rule. Appellee initially contends that any alleged error is harmless because the jury found against appellee on recovery of this $17,680. Our computations do not coincide with those of appellee. Appellee claimed the following sums were due him under the concrete contract:

| | |
|---|---|
| Written contract (this includes $17,680 for a retaining wall): | $594,850.00 |
| "Extras" subsequently orally added to the contract (this includes the additional $17,680 expense in construction of retaining walls): | $103,343.49 |
| TOTAL claimed by appellee for concrete work: | $698,193.49 |

The jury determined that appellee's concrete contract price plus total authorized extras, was $698,193.49. Since this sum exactly coincides with the amount sought by appellee, we do not agree with him that the jury found against him on his claim for the additional $17,680. Nonetheless, we find appellants waived error, if any, in the admission of appellee's testimony regarding the oral modification of the contract, and in the admission into evidence of appellee's Exhibit 4A which listed the additional

sum of $17,680.00 for expenses in the construction of the retaining wall(s). In rebuttal, appellee's counsel again inquired of appellee as to the agreement pertaining to the alleged price modification of the retaining wall. Appellee reiterated his prior testimony that Alton Brown and Steve Warnick told him to "go ahead and do the walls and figure out how much you are going to spend, we will pay you." Appellants did not object to this testimony. The general rule is that error in the admission of testimony is deemed harmless if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984). We find appellants waived error, if any, in the introduction of evidence regarding the retaining walls. Point of error seventeen is overruled.

*Performance of Earthwork In A Good and Workmanlike Manner*

■ In their eighteenth point of error, appellants assert they proved as a matter of law that appellee failed to perform all earthwork in a good and workmanlike manner. Appellants' point of error nineteen claims alternatively that the jury's finding that appellee did not fail to perform all earthwork in a good and workmanlike manner is against the great weight and preponderance of the evidence. It is well settled under Texas law that accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 212 (Tex.1988).

The earthwork contract between appellee and Ambassador was entered into in December 1985, and appellee's earthwork preceded his concrete work. Appellants presented witnesses who testified that after concrete paving was poured in a certain area, the paving collapsed due to improperly compacted soil beneath the concrete, causing an additional expense to Ambassador.

Appellee, however, testified that he had properly compacted the soil, and that the water draining off a building near the collapsed area was running underneath the collapsed parking lot. He further stated that since a french drain was not yet completed by appellants, this water had no place to drain except underneath the parking lot, causing the concrete paving to collapse.

After reviewing this differing testimony, we are unable to say the jury's finding that appellee did not fail to perform all earthwork in a good and workmanlike manner is against the great weight and preponderance of the evidence. Points of error eighteen and nineteen are overruled.

*Mechanic's and Materialman's Lien*

Appellants' points of error nine through twelve raise various complaints concerning the trial court's action in entering judgment in favor of appellee in the amount of $91,011.46 ($85,859.87 plus $5,151.59 prejudgment interest) and the imposition of a mechanic's and materialman's lien on the property and improvements thereon (and ordering foreclosure of said lien), because there was no evidence, or factually insufficient evidence, of the amount of any trapped funds, or the existence of any statutory retainage share.

The Texas Property Code provides two methods by which a subcontractor can perfect a lien upon the owner's property. Subchapter E, "Required Retainage For Benefit of Lien Claimants" (sections 53.101–53.105), is generally referred to as the "statutory retainage" method. This Subchapter provides, in pertinent part, as follows:

**Sec. 53.101. Required Retainage**

(a) During the progress of work for which a mechanic's lien may be claimed and for 30 days after the work is completed, the owner shall retain:

(1) 10 percent of the contract price of the work to the owner; or

(2) 10 percent of the value of the work, measured by the proportion that the work done bears to the work to be done, using the contract price or, if there is no contract price, using the reasonable value of the completed work.

. . . .

### Sec. 53.105. Owner's Liability for Failure to Retain

(a) If the owner fails or refuses to comply with this subchapter, the claimants complying with this subchapter have a lien, at least to the extent of the amount that should have been retained, against the house, building, structure, fixture, or improvement and all of its properties and against the lot or lots of land necessarily connected.

(b) The claimants share the lien proportionately in accordance with the preference provided by Section 53.104.

Property Code, ch. 576, sec. 1, 1983 Tex. Gen.Laws 3475, 3478–79, *repealed by,* Act of June 16, 1989, ch. 1138, secs. 15 & 17, 1989 Tex.Gen.Laws 4693, 4697–98. (These former Code sections are currently located in the 1984 hardback version of Vernon's statutes.)

Additionally, under the "fund-trapping" method, Subchapter D of the Texas Property Code (sections 53.081–53.084), entitled "Funds Withheld by Owner Following Notice," a subcontractor can trap, in the owner's hands, funds payable to the general contractor if the owner timely receives notice from the subcontractor that he has not been paid. If the owner pays any money to the general contractor after receiving this notice from the subcontractor, the owner's property will be subject to a lien to the extent of the money paid. This subchapter provides as follows:

### Sec. 53.084. Owner's Liability

(a) Except for the amount required to be retained under Subchapter E, the owner is not liable for any amount paid to the original contractor before the owner is authorized to withhold funds under this subchapter.

(b) If the owner has received the notices required by Subchapter C, if the lien has been secured, and if the claim has been reduced to final judgment, the owner is liable and the owner's property is subject to a claim for any money paid to the original contractor after the owner

was authorized to withhold funds under this subchapter. *The owner is liable for that amount in addition to any amount for which he is liable under Subchapter E.*

TEX.PROP.CODE ANN. sec. 53.084 (Vernon 1984) (emphasis added) (footnotes omitted).

Appellee proved at trial that the original contract of the owner in the case at bar was for $1.3 million, and that no retainage was made by the owner. Further, the evidence established that Ambassador disbursed $21,248.24 [4] to the original contractor *after* appellee gave the statutory notice required by the Property Code. *Compare Koontz v. U.S. Home Corp.,* 620 S.W.2d 846 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) (wherein the lien claimant failed to prove that at the time the statutory notice was given to the owner, there were funds owed by the owner to the original contractor).

With regard to the statutory retainage method, appellants contend appellee was required to establish his purported share of the $130,000 that should have been retained under Subchapter E, and that it was appellee's burden to put on evidence of the amounts of other lien claims or of the nonexistence of other lien claimants under this fund. In support of their proposition, appellants rely solely upon *M.S. Foundations v. Perma–Crete Bldg. Systems,* 666 S.W.2d 568 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). In *M.S. Foundations,* the owners specifically plead they had set aside the proper amount of retainage, and that any recovery due to the subcontractor was to be taken from said retainage. *Id.* at 571. The subcontractor had not sought in the trial court to recover from this retainage fund, and the appellate court held that "in the absence of proof by the lien claimant of the amount of the retainage to which it was entitled, the court could not make provision for its recovery from such retainage fund." *Id.* We find *M.S. Foundations* to be distinguishable on

---

**4.** Appellee claims this sum is $26,714.92. However, the evidence referred to by appellee (checks made payable to the general contractor after appellee gave the required notice) established the sum to be $21,248.24.

its facts from the instant case and non-supportive of appellants' theory that appellee was required to introduce evidence concerning the amounts sought by any other lien claimants. Although not expressly addressing which party has the burden of proving the existence or nonexistence of other lien claimants under the statutory retainage method, Texas courts have held that where there is no evidence of other lien claimants, the claimant is eligible to recover the entire ten percent provided for under the statute, and is entitled to a corresponding lien. *See, e.g., Hayek v. Western Steel Co.,* 469 S.W.2d 206, 215 (Tex.Civ.App.—Corpus Christi 1971), *aff'd,* 478 S.W.2d 786 (Tex.1972); *W & W Floor Covering Co. v. Project Acceptance Co.,* 412 S.W.2d 379, 382 (Tex.Civ.App.—Austin 1967, no writ).

■ With respect to the fund-trapping method, appellants assert that even assuming arguendo the evidence does show $26,-714.92 (see footnote 4, *supra*) was disbursed by the owner to the original contractor after appellee gave proper notice pursuant to Subchapter D, because this $26,714.92 was not in excess of the 10% the owner was required to retain under Subchapter E, "[t]he $26,714.92 would be part of the $130,000 to be retained by the owner and to be shared proportionally by all valid lien claimants." We disagree with appellants' interpretation of Subchapter D because application of the previously quoted language of section 53.084 expressly provides that the maximum amount of a lien which may be claimed by appellee herein is equal to the amount required to be retained under the statutory retainage method of Subchapter E ($130,000), *plus* any amounts under the fund-trapping method of Subchapter D that were paid by appellants to the contractor after appellants received appellee's statutory notice and warning to retain the funds owing the contractor ($21,248.24). *See First Nat'l Bank in Graham v. Sledge,* 653 S.W.2d 283, 286 (Tex.1983) ("The amount trapped under article 5463 [the predecessor to art. 53.084] may exceed the 10% required to be retained by article 5469 [the predecessor to art. 53.101]."); *see also McKalip v. Smith*

*Bldg. & Masonry Supply, Inc.,* 599 S.W.2d 884, 887 (Tex.Civ.App.—Waco, 1980, writ ref'd n.r.e.).

Accordingly, we find appellee met his burden of proof of establishing his entitlement to a lien under both of the above-discussed methods. Appellants' points of error nine through twelve are overruled.

*Prejudgment Interest*

Point of error thirteen complains that the trial court was unauthorized to enter judgment and lien foreclosure in the amount of $91,011.46, because this amount included the sum of $5,151.59 which represented prejudgment interest from October 1, 1986 through October 1, 1987 at the rate of 6% per annum. Appellants rely upon the case of *Palomita, Inc. v. Medley,* 747 S.W.2d 575 (Tex.App.—Corpus Christi 1988, no writ). In that case, the appellate court modified the trial court's judgment so as to delete from the amount of the statutory mechanic's lien, the amount of prejudgment interest. *Id.* at 578. The court held there was no authority in the Texas statutes to support the trial court's inclusion of such prejudgment interest in the amount of the lien, citing *Ingham v. Harrison,* 148 Tex. 380, 224 S.W.2d 1019 (1949). *Palomita,* 747 S.W.2d at 578.

Appellee maintains prejudgment interest was properly included in the lien since interest is compensation for the detention of money allowed by law, and there was no agreement between the parties as to a fixed rate. Appellee bases his argument upon *Beck v. Lawler,* 422 S.W.2d 816 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n.r.e.) and *Hayek v. Western Steel Co.,* 469 S.W.2d 206, 215 (Tex.Civ.App.—Corpus Christi 1971), *aff'd,* 478 S.W.2d 786, 795–96 (Tex.1972).

Regrettably, appellants' briefs do not mention or seek to distinguish the *Beck* and *Hayek* cases relied upon by appellee. Similarly, appellee has not addressed the applicability of the *Palomita* (or *Ingham*) case upon which appellants base their argument. While we disapprove of this method of appellate advocacy, it is obviously now incumbent upon this court to analyze the

existing law [5] and determine whether the trial court in the instant case erred in entering judgment and lien foreclosure for the prejudgment interest which accrued on the principal sum owed to appellee.

In *Beck,* the trial court entered judgment for the claimant, and ordered foreclosure of the statutory mechanic's and materialman's lien. *Beck,* 422 S.W.2d at 818. However, the trial court denied recovery of prejudgment interest. *Id.* The appellate court held the claimant was entitled to prejudgment interest, and reversed and rendered judgment that claimant recover this amount from the defendant. *Id.* at 820–21. Unfortunately, there is no mention whatsoever in the *Beck* opinion as to whether this prejudgment interest should have been included in the amount of the statutory lien.

Neither do we find guidance regarding this issue in either of the *Hayek* opinions relied upon by appellee. In *Hayek,* the trial court awarded the materialman/claimant a monetary judgment (which included prejudgment interest), and ordered foreclosure of the statutory lien. It is impossible to determine by reading either the court of appeals opinion or the Texas Supreme Court opinion whether this judgment of foreclosure included the amount awarded as prejudgment interest. The court of appeals held the claimant was entitled to prejudgment interest from the thirty-first day after the work was completed. *Hayek,* 469 S.W.2d at 215–16. The supreme court affirmed the judgment of the court of appeals. *Hayek,* 478 S.W.2d at 795–96. Neither opinion touches upon whether this prejudgment interest is properly includable within the statutory lien.

In *Palomita,* the Corpus Christi court held that although statutory attorney's fees were recoverable by a lien claimant, there was no basis in the statutes for the attorney's fees to be included in the amount of the mechanic's lien. *Palomita,* 747 S.W.2d at 577–78. The court then held,

without further analysis, that prejudgment interest should not be included in the mechanic's lien. *Id.* at 578. The *Palomita* court relied upon *Ingham v. Harrison* as authority for this holding. *Id.* As stated by the supreme court in *Ingham,* that case involved a "rather complicated dispute between various parties regarding a builder's lien note and contract...." *Ingham,* 224 S.W.2d at 1019. The supreme court disallowed prejudgment interest sought by a builder who sued the makers of a construction note (who were also the owners of the real property). *Id.* at 1021–23. The court held that interest should not have been allowed to accrue before the date of the trial court's judgment. *Id.* at 1022. Our analysis of the *Ingham* opinion leads us to conclude that it is not factually on point with the case at bar because it involved a constructual contract *and a written promissory note,* rather than merely a construction contract as existed between appellants and appellee herein. More importantly, in *Ingham* the factor which the supreme court emphasized was that the holder of the note (the assignee of the original builder/payee), was not a holder in due course; therefore, he took the note "subject to the defenses of the maker, including those arising from the building contract." *Id.* at 1021. Accordingly, since the makers of the note asserted the defense of defective construction of the structure, *id.* at 1020, no interest was allowed to accrue before the date of the judgment. *Id.* at 1022. We note additionally that in *Ingham* the trier of fact disallowed the majority of the amounts claimed by the builder, *id.* at 1022, whereas in the instant case appellee recovered the full amount sought under the construction contract.

In light of the supreme court's express language in *Hayek* that prejudgment interest accrued beginning on the thirty-first day after the construction was completed, *Hayek,* 478 S.W.2d at 795–96, and

---

5. Most of the cases dealing with mechanic's and materialman's liens are construing the predecessor statutes to the Property Code sections which were in effect at the time of the instant trial. The statutory retainage method of lien perfection was dealt with in former TEX.REV.CIV. STAT.ANN. art. 5469 and the fund-trapping method was provided for in former TEX.REV. CIV.STAT.ANN. art. 5463, Act of June 17, 1961, ch. 382, secs. 9 & 6, 1961 Tex.Gen.Laws 863, 867–69, *repealed by,* Property Code, ch. 576, sec. 6, 1983 Tex.Gen.Laws 3475, 3729–30.

the fact that the Court in *Hayek* did not mention the much older *Ingham* opinion which involved a promissory note held by a nonholder in due course, we hold the trial court in the case before us properly allowed appellee to recover prejudgment interest on his claim. However, although we are reluctant to follow our sister court and use *Ingham* as authority for the proposition that prejudgment interest is not properly includable in the amount of the statutory lien, we do agree the Texas Property Code does not make any provision for the inclusion of prejudgment interest in the statutory lien.

A mechanic's and materialman's lien is purely a creature of the Texas Constitution and the statutes. *Wood v. Barnes*, 420 S.W.2d 425, 428 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.); *see* TEX. CONST. art. XVI, sec. 37; TEX.PROP.CODE ANN. ch. 53 (Vernon 1984 & Supp.1990). It is well settled that a statutory lien must find a basis in the express language of the statute. *Tigner v. First Nat'l Bank of Angleton*, 153 Tex. 69, 264 S.W.2d 85, 89 (1954). Section 53.023 of the Property Code states the lien secures payment for "the labor done or material furnished for the construction or repair." Section 53.024 provides that the amount of a lien claimed by a subcontractor may not exceed:

(1) an amount equal to the proportion of the total subcontract price that the sum of the labor performed, materials furnished, materials specially fabricated, reasonable overhead costs incurred, and proportionate profit margin bears to the total subcontract price; minus

(2) the sum of previous payments received by the claimant on the subcontract.

TEX.PROP.CODE ANN. secs. 53.023 & 53.024 (Vernon 1984). We recognize that the mechanic's and materialman's lien statutes in Texas are to be liberally construed for the purpose of protecting laborers and materialmen. *Republicbank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985); *Industrial Indem. Co. v. Zack Burkett Co.*, 677 S.W.2d 493, 495 (Tex. 1984) (per curiam). However, nowhere is there any indication in the statutes that the lien should include prejudgment interest on a subcontractor's claim. In section 53.024 the Texas legislature specifically delineated the items which could be included in a mechanic's and materialman's lien. The legislature could have provided for the inclusion of prejudgment interest in the lien, but did not do so. Therefore, we hold the trial court herein erred in including prejudgment interest in the amount of appellee's lien.

We sustain that portion of appellants' thirteenth point of error which challenges the inclusion of the prejudgment interest in the lien, and we modify the trial court's judgment so as to delete the prejudgment interest award of $5,151.59 from the lien.

*Attorney's Fees*

In their fourteenth point of error, appellants assert that to the extent appellee's lien claim is not valid or enforceable and appellee cannot recover for lien foreclosure, appellants are entitled to recover their attorney's fees under former section 53.156 of the Texas Property Code. *See* Act of July 12, 1984, ch. 18, sec. 4(a), 1984 Tex.Gen.Laws 94, 95, *amended by* Act of June 16, 1989, ch. 1138, sec. 22, 1989 Tex. Gen.Laws 4693, 4699–4700. (The former Code section is currently located in the 1984 hardback version of Vernon's statutes.) Section 53.156(b) provided:

(b) If a claim for a lien provided under Section 53.021 is not valid or enforceable because of the failure to fix and secure the lien under this chapter or for any other reason, the owner, original contractor, subcontractor, or any surety under a bond is entitled to recover from the claimant all reasonable costs of defending against the lien claim, including attorney's fees.

Because we have modified the trial court's judgment so as to delete the prejudgment interest from the lien, we sustain appellants' fourteenth point of error and remand the cause to the trial court to determine the amount, if any, Opus is entitled to recover as attorney's fees attributable to defending appellee's claim that prejudg-

ment interest should be included in the statutory lien.[6]

*Post-trial Motions*

Appellants' final point of error argues the trial court erred in overruling various post-trial motions made by appellants. We have previously ruled adversely to appellants regarding all but one of the issues raised by them in these motions. Therefore, we overrule point of error twenty, except as it pertains to the inclusion of prejudgment interest in the statutory lien provided for in the trial court's judgment; that one portion of point twenty we sustain, as discussed earlier in our opinion.

APPELLEE'S CROSS–POINTS

Appellee raises five cross-points of error. Appellants assert this Court has no jurisdiction over appellee's cross-points inasmuch as appellee did not perfect a separate cross-appeal. We disagree, and hold we have jurisdiction over appellee's cross-points. The Texas Supreme Court has stated the rule on this issue as follows:

> Unless an appellant limits his appeal pursuant to Texas Rule of Appellate Procedure 40(a)(4), an appellee may complain by cross-point in his brief in the court of appeals, without perfecting an independent appeal, of any error in the trial court as between appellant and appellee.

*Warren v. Triland Investment Group,* 779 S.W.2d 808, 809 (Tex.1989) (per curiam). Because appellants did not limit their appeal pursuant to TEX.R.APP.P. 40(a)(4), we are required to consider appellee's cross-points. *See Warren,* 779 S.W.2d at 809.

■ Cross-points one, two and three all pertain to appellee's claim for attorney's fees. The trial court refused to permit appellee's attorney to testify because he had not been disclosed as an expert witness in appellee's answers to interrogatories. *See* TEX.R.CIV.P. 166b(6)(b) & 215(5). The court subsequently granted appellants' motion for directed verdict with respect to

appellee's attorney's fees claim, for the reason that there was no evidence concerning any element of that claim. Appellee contends his failure to timely disclose his attorney as an expert witness in answers to interrogatories was due to mere "inadvertence." We agree with appellants that the trial court properly excluded appellee's attorney's testimony in appellee's case-in-chief, because appellee did not establish good cause for the nondisclosure. *See E.F. Hutton & Co. Inc. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987) (per curiam opinion on reh'g).

■ Appellee also claims his attorney's testimony was admissible to "rebut" the testimony of appellants' attorney regarding attorney's fees. Appellee's position is that he anticipated appellants' expert witness would testify that the work to be performed in preparing the case for trial, and the attorney's fees, would be approximately equal for appellants and appellee. Therefore, this testimony would be sufficient to entitle appellee to submission of a jury issue regarding his own attorney's fees. Appellee further theorizes that when appellants' attorney took the position that both sides of the case were not alike and that he had no idea what a hypothetical attorney's fee would be for appellee, appellee was entitled to rebut appellants' expert by having his own (undisclosed) expert testify. Appellee has not cited any authority in support of his apparent theory that rules 166b(6)(b) and 215(5) of the Texas Rules of Civil Procedure do not apply to the testimony of his attorney as a rebuttal witness. At least one court has rejected the contention that rule 166b(6)(b) cannot apply to an unidentified rebuttal witness. *See Greenstein v. Burgess Mktg.,* 744 S.W.2d 170, 178–79 (Tex.App.—Waco 1987, writ denied). A trial court can either allow or refuse to allow a previously unidentified expert to testify on rebuttal, and the court's decision is only reversible if it is an abuse of discre-

---

6. We note that appellants' attorney testified at trial that it was impossible to segregate the amount of attorney's fees attributable to defending against appellee's lien claim, and those pertaining to appellants' counterclaim. [138] We are unable to determine from this testimony whether appellants' attorney was referring to Ambassador's counterclaim for faulty workmanship, Opus' counterclaim for removal of the lien, or to both counterclaims. Obviously, we cannot anticipate what evidence will be presented upon limited remand of this issue.

tion. *Id.* at 179; *see also* cases compiled in a recent Texas Bar Journal article: Bukowski, *The Undisclosed Witness: Will the Testimony Be Admissible?*, 52 TEX.B.J. 1270, 1273–74 (1989). We hold the trial court in the instant case did not abuse its discretion in refusing to allow appellee's tendered rebuttal testimony. Appellee's cross-points one, two, and three are overruled.

Appellee's last two cross-points deal with the trial court's refusal to admit into evidence appellee's Exhibit 6 ("Affidavit For Business Records and Repair Costs" and three attached invoices), and in refusing to submit to the jury an issue on negligently damaged equipment owned by appellee.

Appellee sought to recover $6,229.52 for repair of two pieces of equipment which he alleged were negligently damaged by appellants, or their employees. He did this by attempted introduction of the aforementioned affidavit and invoices. Appellee urged that because he complied with the self-authentication requirements of TEX.R. CIV.EVID. 902(10) ("Business Records Accompanied by Affidavit"), the exhibit should have been admitted. Appellants objected on the grounds the exhibit was hearsay, and not admissible under TEX.R.CIV. EVID. 803(6) as business records of either appellee or his construction company.

In support of their respective positions on the issue of whether appellee established he had personal knowledge of the contents of the invoices, as required by rule 803(6), both sides rely upon *Duncan Dev., Inc. v. Haney*, 634 S.W.2d 811 (Tex. 1982). The affidavit in that case was sworn to by Duncan, the general contractor of a construction project. The attached invoices had been received by Duncan from his subcontractors, seeking payment for services rendered. At trial, there was considerable testimony from Duncan, his chief accountant, and his construction supervisor concerning the procedure which Duncan's company followed in an effort to verify the accuracy of a subcontractor's submitted charges. *Duncan*, 634 S.W.2d at 812–14. The supreme court held the proponent of the affidavit under former TEX.REV.CIV. STAT.ANN. art. 3737e [7] (currently set out in the supplement to article 3737e) satisfied the personal knowledge requirement of article 3737e. *Duncan*, 634 S.W.2d at 813–14.

Appellee's affidavit in the instant case read, in pertinent part:

"My name is Juan Valdez, I am over 21 years of age, of sound mind, capable of making this affidavit, and am personally acquainted with the facts stated herein.

I am the owner and custodian of the records of JV Construction Company. As custodian of the records, I have charge of the records showing charges made to JV Construction Company. Attached hereto are 3 pages of records from JV Construction Company relating to charges incurred by JV Construction for repairs to various equipment belonging to JV Construction Company due to the negligent operation therof [sic] by employees of Ambassador Development Corporation. These 3 pages of records are kept by JV Construction Company in the regular course of business and it was the regular course of business of JV Construction Company for an employee or representative of JV Construction Company, with knowledge of the act, event, condition, or opinion, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

The charges incurred by JV Construction Company for these repairs were necessary, and the itemized charges for such charges were reasonable at the time and place the repairs were provided.

The total of the itemized charges is $6,229.52.

**7.** Act of June 2, 1951, ch. 321, secs. 1–6, 1951 Tex.Gen.Laws 545, 545–46, *amended in part by,* Act of May 18, 1973, ch. 128, secs. 1 & 2, 1973 Tex.Gen.Laws 276, 276–77, *repealed by,* Act of June 14, 1985, ch. 685, sec. 9, 1985 Tex.Gen. Laws 2472, 2474 and by order of the Texas Supreme Court dated Nov. 23, 1982, eff. Sept. 1, 1983, adopting the Texas Rules of Evidence.

When appellee sought to introduce Exhibit 6 into evidence, he testified he had to have two pieces of equipment repaired because appellants had damaged these items, and the invoices attached to Exhibit 6 were received by him when he had this equipment repaired. This was the extent of appellee's testimony concerning his personal knowledge of the contents of the invoices. We find the trial court correctly excluded appellee's Exhibit 6 because the affiant did not adequately establish that he or anyone in his company had personal knowledge of the contents of the exhibit, as required by *Duncan*. Appellee's cross-points four and five are overruled.

CONCLUSION

In summary, we affirm that portion of the trial court's judgment which awards appellee $91,011.46 in damages against Ambassador. We modify that portion of the judgment which imposes, and orders foreclosure on, a statutory mechanic's and materialman's lien on the property of Opus, so as to delete the $5,151.59 award of prejudgment interest from the amount of the lien. We remand the cause to the trial court on the sole issue of the amount, if any, Opus is entitled to recover as attorney's fees attributable to defending appellee's claim that prejudgment interest should be included in the amount of the statutory lien. As modified, the remainder of the trial court's judgment is affirmed. In view of our disposition, we find good cause to assess costs of appeal one-half against appellee and one-half against appellants.