Seville Flexpack v. Leathers 






NO. 10-89-290-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

Â Â Â Â Â Â Â Â Â Â SEVILLE FLEXPACK CORPORATION,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â Â Â BOB LEATHERS, D/B/A R & L STEEL
Â Â Â Â Â Â Â Â Â Â ERECTORS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee

* * * * * * * * * * * * *

 From 19th Judicial District Court
McLennan County, Texas 
Trial Court # 88-1460-1

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Â Â Â Â Â Â Â Â Â Â This appeal arose from a suit brought by Bob Leathers, doing business as R & L Steel
Erectors (Leathers), against Seville Flexpack Corporation (Seville) in April 1989, seeking damages
for breach of a construction contract and, alternatively, asserting a right to recover on the basis
of quantum meruit for the reasonable value of labor and equipment used in erecting a steel
structure as part of Seville's manufacturing plant. The primary complaints on appeal are that the
trial court abused its discretion in submitting a charge on substantial performance when only full
performance had been pleaded and in awarding Leathers the full contract price even though the
jury found "zero" to be the cost of remedying any defects or omissions. Seville also complains
of the admission into evidence of a letter which it maintains constituted settlement negotiations. 
Finally, Seville appeals the judgment in favor of Leathers for attorney's fees because there was
no evidence to support such an award. The judgment will be affirmed.
Â Â Â Â Â Â Â Â Â Â The judgment awarded Leathers damages against Seville totaling $9,939, plus pre-judgment
and post-judgment interest. The court expressly stated in the judgment that Leathers was awarded
attorney's fees based on a stipulation that the prevailing party was to be awarded $3500 in
attorney's fees as a part of the judgment. The court entered a take-nothing judgment against
Seville on its counterclaim. 
Â Â Â Â Â Â Â Â Â Â Seville contracted to pay Leathers for services rendered at an agreed rate per ton of steel,
the contract price totaling $57,850. Leathers could periodically request payment based upon the
approval and certification of the work by Drennon & Associates, the architectural firm who
designed the building and inspected Leathers' work prior to payment by Seville. Although the
first three "draws" Leathers submitted to Seville were paid in full, Seville refused to pay the fourth
and final draw in the amount of $9,939, plus $800 allegedly due for extra work. This refusal
resulted in Leathers filing suit. Seville counterclaimed, alleging violations of the Texas Deceptive
Trade Practices Act (DTPA). Both parties sought to recover their attorney's fees.
Â Â Â Â Â Â Â Â Â Â The jury found that Leathers had substantially performed under the contract and that the
cost of remedying any defects or omissions to make the structure conform to the contract was
"zero." The jury failed to find that Leathers had done "extra welding" on the building at Seville's
request or that Leathers had committed any DTPA violations. No questions concerning recovery
of attorney's fees incurred by either party were submitted in the charge.
Â Â Â Â Â Â Â Â Â Â In points one through seven, Seville argues that the court abused its discretion in submitting
the questions on substantial performance and the cost to remedy defects in the construction when
Leathers had only pleaded full performance. Seville also argues that the court erred in entering
judgment on the jury's finding of "zero" as the cost to repair any defects because Leathers failed
to plead and prove such costs and because the answer of "zero" constituted no finding on the
requisite element of cost to repair, thus rendering the jury's finding of substantial performance
immaterial. Seville further contends that the court erred in entering a judgment for Leathers
because, as a matter of law, Leathers' substantial performance cannot support a judgment for the
entire contract price.
Â Â Â Â Â Â Â Â Â Â Whether the questions submitted in the charge control the disposition of the case as raised
by the pleadings and the evidence and properly submit the disputed issues for the jury's
determination are generally matters left to the discretion of the trial court. Baker Marine Corp.
v. Moseley, 645 S.W.2d 486, 489 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.). However,
whether the charge has submitted the controlling theories of recovery or defense and whether
particular questions submitted were supported by the pleadings are questions of law to be reviewed
de novo. See Continental Casualty Co. v. Street, 379 S.W.2d 648, 651 (Tex. 1964).
Â Â Â Â Â Â Â Â Â Â The theory of substantial performance permits a contractor to recover the full performance
price on the contract less the cost of remedying the defects that can be fixed. Vance v. My
Apartment Steak House, Inc., 677 S.W.2d 480, 481 (Tex. 1984). A pleading of full performance
of the contract will support submission of a question to the jury on substantial performance in a
suit on a construction contract. Uhlir v. Golden Triangle Development Corp., 763 S.W.2d 512,
514-15 (Tex. App.--Fort Worth 1988, writ den'd); Shaddock v. Storm King Window Co., 696
S.W.2d 271, 273 (Tex. App. -- Fort Worth 1985, writ ref'd n.r.e.). Â Â Â Â Â Substantial performance
was defined in the charge as "performance in all essential and important particulars, so that the
building is suitable for the purpose intended, or may be made so with relatively minor corrective
work." Seville introduced the majority of the evidence on what it claimed to be defects in the
construction as well as on the cost to repair them. These alleged defects included five-hundred
feet of parapet which had to be removed and replaced, removal and replacement of improperly
welded steel bars which were removed in conjunction with the repair to the parapet, problems with
steel lintels above and below windows, as well as the correction of a roof angle to allow window
and brick installation. The record indicates that all of Leathers' work was inspected by the
consulting structural engineer on the project and was approved by him or by Drennon &
Associates and that Leathers adhered to the shop drawings drafted by Davis Iron Works from the
project plans and specifications. Even the project manager for Seville testified that he knew of no
reason why Leathers should not be paid in full, as Leathers had remedied the defects pointed out
to him for which he was responsible. 
Â Â Â Â Â Â Â Â Â Â Â In addition to the jury finding that Leathers had substantially performed, the jury failed
to find in response to subsequent questions that the labor and materials provided by Leathers were
represented to have certain characteristics, uses or benefits which they did not have, or that the
labor and materials were of a particular standard, grade or quality when they were of another. 
Questions one and two correctly submitted the disputed, controlling issues as raised by the
pleadings and evidence for the jury's determination. 
Â Â Â Â Â Â Â Â Â Â Seville's contention that the jury's response to question two concerning cost of repair
constituted no finding on one of the essential elements needed to support a recovery based upon
substantial performance is also without merit. The jury's answer of "zero" was not a "failure to
find" the cost of necessary repairs to make the structure conform to contract specifications, as
Seville maintains, but rather an affirmative finding of Seville's cost to remedy sufficient to support
a recovery based upon substantial performance. The "zero" response does not, as a matter of law,
reflect a failure of proof of Leathers' substantial performance claim. See Ambassador
Development Corp. v. Valdez, 791 S.W.2d 612, 615-16 (Tex. App.--Fort Worth 1990, no writ). 
In light of all the evidence, the jury's finding could have represented the jury's conclusion that any
problems which remained after Leathers completed the project, later corrected by Seville, were
not attributable to Leathers' performance. Seville has not challenged the sufficiency of the
evidence to support the finding, and this court may not substitute its judgment for that of the jury,
particularly in resolving conflicts or inconsistencies in the evidence. See Shaddock, 696 S.W.2d
at 273. Points one through seven are overruled.
Â Â Â Â Â Â Â Â Â Â In points eight through ten, Seville complains that the court abused its discretion in
admitting into evidence a February 7, 1988, letter from Walter Yakich, the president of Seville,
to John Rogers, the consulting structural engineer, and to Drennon & Associates concerning
Leathers' performance on the contract. Seville contends the letter constituted evidence of
settlement negotiations. It also claims that the court erred in allowing testimony based upon the
letter and in allowing the letter to be shown to the jury when it had not been properly admitted. 
Yakich stated in the letter that he had "spent about $5,000 paying my people and buying steel to
correct the workmanship." He then stated, "I am willing to pay the balance due less $5,000
providing we receive from R & L a written legal document that this is final and complete payment
for all work he has performed on the building." Following a conference with the court outside
the presence of the jury, the court overruled Seville's objection to the exhibit and stated on the
record, "I'm going to permit the testimony or the document." 
Â Â Â Â Â Â Â Â Â Â Seville's complaint, that the letter was evidence of settlement negotiations between parties,
necessarily assumes that Rogers was the representative or agent of Leathers on the project, though
the record clearly shows Rogers to have been a representative of Seville and Yakich. See Tex.
R. Civ. Evid. 408. Assuming that the letter included an offer to settle and further assuming that
its admission was error, its admission and the related testimony were harmless because Seville has
failed to demonstrate that it was reasonably calculated to cause and probably did cause rendition
of an improper judgment. The record does not indicate that any offer was actually made to
Leathers. See Tex. R. App. P. 81; Beutel v. Paul, 741 S.W.2d 510, 513-14 (Tex. App.--Houston
[14th Dist.] 1987, no writ). Furthermore, if Seville thought that the court's ruling was unclear,
it had the burden of securing a more definite ruling. See Perez v. Baker Packers, 694 S.W.2d
138, 141 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.). Moreover, Seville failed to
object to the particular portion of the letter it contended was inadmissible and thus error, if any,
has been waived. See Speier v. Webster College, 616 S.W.2d 617, 619 (Tex. 1981). Points eight
through ten are overruled.
Â Â Â Â Â Â Â Â Â Â In points eleven and twelve, Seville argues that the court abused its discretion in entering
judgment for Leathers for attorney's fees because the evidence was legally insufficient to support
the award. Although both parties sought to recover attorney's fees in their pleadings and alleged
causes of action which would have supported the recovery of those fees, the only evidence of
attorney's fees in the record is Leathers' testimony of Leathers that he agreed to pay his attorneys
a reasonable fee. As previously stated, no questions on attorney's fees were included in the
charge. Nevertheless, the court specified in its judgment that the attorneys had stipulated that the
prevailing party would recover attorney's fees in the amount of $3,500. The court then rendered
judgment for Leathers on the stipulation. Seville does not deny that a stipulation was in fact made
and is accurately reflected in the judgment, but simply points to the lack of a written stipulation
filed with the court as required by Rule 11. See Tex. R. Civ. P. 11 (Vernon 1979). However,
Rule 11 is satisfied if the agreement is made in open court and is described in the judgment. See
id.; City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 677 (Tex. 1979). The court
in the present case did not abuse its discretion in adequately describing in the judgment the
attorneys' agreement as the court apparently understood it. Points eleven and twelve are
overruled.
Â Â Â Â Â Â Â Â Â Â The judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOBBY L. CUMMINGS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Before Chief Justice Thomas,
Â Â Â Â Â Â Â Â Â Â Justice Cummings and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed February 28, 1991
Do not publish 



imes"'>   There is no evidence that Richardson has a prior criminal history, which indicates the lack of necessity for a
particularly high bail.Â  But on the other hand, evidence suggests that a relatively
high bail is necessary because there is evidence that Richardson poses a flight
risk.

Conclusion








After considering the factors of article 17.15
and the record before us, we cannot say the trial court abused its discretion
in refusing to reduce RichardsonÂs bail to $50,000.Â  See McCullough, 993
S.W.2d at 839.Â  Accordingly, we overrule her sole issue and affirm the trial
courtÂs ruling.

Â 

Â 

BILL VANCE

Justice

Â 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray concurs in the result
without a separate opinion)

Affirmed

Opinion
delivered and filed November 9, 2005

Publish

[CRPM]